## DUVALL v. UNITED STATES.
### No. 6168.

Circuit Court of Appeals, Third Circuit.
Feb. 15, 1938.

Higbee, Matthews & Lewellyn, of Uniontown, Pa. (W. Brown Higbee, of Uniontown, Pa., of counsel), for appellant.

**912**

Stanley Granger, Asst. U. S. Atty., and Charles F. Uhl, U. S. Atty., both of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment entered upon the verdict of a jury finding the appellant, hereinafter called defendant, guilty, under an indictment of twelve counts charging, in ten counts, misapplication of the bank's money and, in two counts, false entries.

As to misapplication, the indictment charges that the defendant "willfully, unlawfully, fraudulently and .feloniously appropriated and converted to his use the money" and "willfully misapplied the said moneys, funds and credits with the intent to injure and defraud said member bank." It also charged as to false entries, that he made them "unlawfully, willfully, knowingly, wrongfully and feloniously * * * with intent * * * to defraud said member bank."

The transactions which the government contends constitute the crime of which the defendant was convicted were as follows:

The defendant through his account with a broker at different times purchased stock which was sent to the bank of which the defendant was cashier with sight draft attached. The bank paid the draft and received the stock. The books of the bank did not show a repayment to the bank on the day the draft was paid by it. The stock was later not found in the possession of the bank. There the transaction stopped, for the learned trial judge would not permit the defendant to show that the draft, with which the bank paid for the stock, was in every case "offset by an entry in cash items"; that is, that the defendant paid the bank the amount of the draft in cash before taking the stock from its possession.

On this state of the record the jury could do nothing else than find the defendant guilty, for the evidence as it stood showed that the bank had been injured and defrauded as charged.

In his charge on this point the judge said:

"Now, the fact that Duvall may have paid back to the bank this money the latter part of December, if it was for his account, would not be any real defense, if he intended to use and did use the bank's funds earlier to buy this stock, because the restitution or restoration of moneys unlawfully and willfully misapplied is not cured by merely paying the money back at some later date. He might have had a change of heart or a change of mind with reference to the lawfulness of the transaction."

■■ This language presupposes that the crime had already been committed. This might or might not have been the fact. Whether or not the crime had been committed depends upon the finding of the jury as to intent. The defendant was charged with "fraudulently and feloniously" misapplying moneys of the bank with intent to injure and defraud the bank. The statute makes "intent * * * to injure or defraud," 12 U.S.C.A. § 592, the bank a necessary element of the crime. Intent to injure and defraud the bank was, accordingly, an essential element of the crime which the government had to establish in the minds of the jury beyond a reasonable doubt. What the defendant did in repaying the money, in offsetting the draft by cash, on the very day the draft was issued or thereafter, bore directly upon the intent of the defendant and the jury was entitled to know the facts in determining that question. That the bank was not injured nor defrauded and that the defendant repaid every cent to the bank which it paid out when it received the stock was very material as to whether or not he had misapplied the bank's money with intent to injure and defraud it. The refusal to admit that evidence and the charge that such payments were immaterial were prejudicial. The very heart of the defense which the defendant had the right to make against the charge of intent to injure and defraud was thus denied him.

In the case of McCallum v. United States, 8 Cir., 247 F. 27, the court charged that the defendant's intent to defraud the bank was "an indispensable element." From all that the defendant said and did in the case at bar, the jury was to determine the question of defendant's guilt, but the court excluded everything that was not done the day of the issue of the draft and charged that it was immaterial. In this the court erred.

■ Of course, as the court charged, the offense "consists of the evil design with which the misapplication was made, and

the intent to injure and defraud the association," but it excluded the evidence from which the jury could have found that the defendant did not have an evil design or intent to injure and defraud the bank. If the money was taken or misapplied with that intent, restitution would not excuse the previous crime. There is no question about this proposition. United States v. Morse et al., C.C., 161 F. 429; Savitt v. United States, 3 Cir., 59 F.2d 541. But it was necessary for the jury to know the circumstances under which the alleged misapplication took place and that the defendant paid for the stock before taking it from the bank in order to determine intent. Whether or not the payment to the bank of the money used by it to pay for stock purchased for Duvall or a customer before the stock was removed from the bank's custody was restitution resulting from a change of heart after the crime had been committed or was part of a single transaction in which no intent to injure or defraud had ever existed, could only be determined when all the facts surrounding the transaction were known by the jury. Counsel for the defendant contends in his brief that what took place in this case was the customary transaction which takes place daily all over the country. He says that:

"The case simply presents a situation which occurs daily throughout the United States—a customer desires to purchase certain stock, his bank places the order through its account, the stock is purchased by the broker and delivered on sight draft, the sight draft is paid by the bank by the issuance of its draft, the stock then comes into its possession and is turned over to the purchaser upon payment by him. No court would hold that the cashier of a bank, under these circumstances, would be guilty of a wilful misapplication of the bank's funds under section 5209 if the customer failed to lift his stock until three or four weeks after its receipt by the bank. The fact that Appellant was an officer of the Bank does not change this situation. His intent is the criterion of the case. Nothing can more forcibly demonstrate that intent than the fact that he did lift the stock and that the Bank was not defrauded and that it did not lose any of its money."

The defendant should have been permitted to show that all the stock purchased, as charged in the indictment, was paid for by him before it was removed from the bank and that at all times between the issuance of the draft paying for the stock and the delivery of it to the defendant, the bank had the stock in its possession. It was charged in the indictment that the funds represented by the draft were withdrawn from the bank and wholly lost to it. The defendant says that the evidence excluded would have shown this charge to be wholly untrue. In other words, the government charged that the bank lost the money, but it objected to the admission of the evidence which would have disproved its charge.

The court charged that the defendant was presumed to have intended the natural consequences of his acts, but that presumption is rebuttable and the court excluded the evidence by which the defendant might have rebutted it.

■ The defendant further contends that the court erred in admitting evidence over his objection of his account with the brokerage firm of Moore, Leonard & Lynch. The account showed large stock transactions of the defendant for a period of more than a year, but only "three or four items" dealt with matters laid in the indictment. The admission of this large account, nearly all of which had nothing to do with the charges, served to create the impression that the defendant was a large stock gambler and was detrimental to him.

■ To prove that the bank had sustained a loss the government called W. R. Stephens, trust officer of the First National Bank & Trust Company, who was in no way connected with the Citizens National Bank of which the defendant was cashier at the time the bank is alleged to have lost the money in question, and had him testify that he had examined the books of the bank and found no charge to any one's account on the days the various drafts were drawn, but did find an increase in the cash items. The books themselves were the best evidence and should have been admitted in evidence in view of the fact that the witness did not qualify as an expert in banking and bookkeeping, competent to testify as to what the books show. A stranger, not an expert, is not qualified so to testify as to what books show. The books should have been produced and the items relied upon to prove the charges made in the indictment identified by some one whose expert bookkeeping knowledge and experience quali-

914

fied him to give the information sought. It may be that Mr. Stephens is an expert and that his experience and familiarity with the books enabled him to give the information sought, but the evidence does not show it.

The judgment is reversed and a new trial awarded.