UNITED STATES of America,
Appellee.

v.

James Paul SCOBLICK, Frank Scoblick,
and Scoblick Bros., Inc.,
Appellants.

Nos. 11487 to 11492.

United States Court of Appeals
Third Circuit.

Argued May 5, 1955.

Decided July 14, 1955.

Rehearing Denied Sept. 28, 1955.

Joseph P. Brennan, Scranton, Pa. (James E. O'Brien, Scranton, Pa., on the brief), for appellants.

Floyd Mattice, Sp. Asst. to the Atty. Gen., Washington, D. C. (Warren Olney III, Asst. Atty. Gen., on the brief), for appellee.

Before GOODRICH and HASTIE, Circuit Judges, and MILLER, District Judge.

JOHN L. MILLER, District Judge.

Appellants were convicted under two indictments: the first, containing thirty counts, charged that James Scoblick, Frank Scoblick and Anthony Scoblick, and the corporate defendant, Scoblick Bros., Inc., aided and abetted Michael Senio, cashier of Mayfield State Bank, in misapplying certain funds of the bank and in making false entries in the bank's records, and that the same defendants conspired with Senio to commit such acts.

The second indictment, containing thirty-five counts, charged defendants with using the mails to defraud.

Defendant Senio pleaded guilty and testified for the Government. Appellants were found guilty on all of the counts save one, No. 28 in the first indictment, charging a false entry. All of the defendants except Senio filed motions for judgments of acquittal and new trials.

The trial court directed the entry of a judgment of acquittal as to all appellants under Count 5 of the first indictment, charging misapplication, and denied all other motions. D.C., 124 F. Supp. 881. Judgment and sentences were then entered.

These appeals on behalf of James Paul Scoblick, Frank Scoblick, and Scoblick Bros., Inc., followed.

1. Appellants contend that the trial court committed reversible error in refusing, upon their motion, to sever the conspiracy count from the other twenty-nine counts of the first indictment. The twenty-nine substantive counts charged misapplication of funds and the making of false entries, and the thirtieth count charged a conspiracy to commit the offenses charged in the preceding twenty-nine counts. Appellants urge, in substance, that such denial of severance was prejudicial because certain evidence was admitted as being relevant to the conspiracy count which would not have been admissible in a trial of the counts charging substantive offenses alone.

Appellants place much reliance upon the concurring opinion of Mr. Justice Jackson in Krulewitch v. United States, 1949, 336 U.S. 440, 445–458, 69 S.Ct. 716, 93 L.Ed. 790, and the dissenting opinion of Mr. Justice Frankfurter in Nye & Nissen v. United States, 1949, 336 U.S. 613, 626, 69 S.Ct. 766, 93 L.Ed. 919. These opinions are concerned primarily with the development of the conspiracy doctrine itself, rather than with the practice of trying conspiracy counts together with substantive counts. In the instant case it is not asserted that the offending evidence admitted was not relevant, competent, and material to the conspiracy count. We perceive no error in the denial of severance unless we are to hold that trying a conspiracy count together with substantive counts consti-

tutes, *per se*, an abuse of discretion. The law is well settled to the contrary. See United States v. Antonelli Fireworks Co., 2 Cir., 155 F.2d 631, 635, certiorari denied 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640, rehearing denied, 1946, 329 U.S. 826, 67 S.Ct. 182, 91 L.Ed. 701; United States v. Marzano, 2 Cir., 1945, 149 F.2d 923; Davis v. United States, 5 Cir., 148 F.2d 203, certiorari denied, 1945, 325 U.S. 888, 65 S.Ct. 1570, 89 L.Ed. 2001; United States v. Brandenburgh, 2 Cir., 1945, 146 F.2d 878; Firotto v. United States, 8 Cir., 1942, 124 F.2d 532; Cardigan v. Biddle, 8 Cir., 1925, 10 F.2d 444; cf. Opper v. United States, 1954, 348 U.S. 84, 94–95, 75 S.Ct. 158.

Moreover, the admission of evidence relevant to the conspiracy count in the trial of the substantive counts could not possibly constitute prejudicial error as to the conspiracy count. The individual defendants were sentenced concurrently on all counts. Hence, as to them, it is clear that any error with respect to the substantive counts alone would not justify a reversal. See United States v. Sheridan, 1946, 329 U.S. 379, 381, 67 S.Ct. 332, 91 L.Ed. 359; Pinkerton v. United States, 1946, 328 U.S. 640, 641 note 1, 66 S.Ct. 1180, 90 L.Ed. 1489; Hirabayashi v. United States, 1943, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774; Whitfield v. Ohio, 1936, 297 U.S. 431, 438, 56 S.Ct. 532, 80 L.Ed. 778; United States v. Smith, 3 Cir., 1953, 206 F.2d 905, 908; United States v. Murphy, 3 Cir., 1941, 123 F.2d 1008.

2. Appellants argue that a new trial should be granted because of certain exaggerations made during the trial as to the amount of money and the number of checks involved. Chiefly, appellants contend that reversible error occurred in the denial of their motion for withdrawal of a juror after the following statement was made in government counsel's opening address to the jury:

"Now, the operation of that system and scheme of these insufficient fund checks, and there were many and many of them as the evidence here will show you, and the aggregate amount of which checks, as the evidence here will show you, was considerable. I believe the evidence will show you that they wrote and put through under this scheme that I have been describing to you here, 342 checks aggregating four and a third million dollars."

Appellants' position is that the foregoing constituted a gross exaggeration, inasmuch as they were charged with the misapplication of only $74,000, and the proof showed a misapplication of no more than $16,000. Most of the discrepancy in amounts, however, lies in the fact that government counsel was referring to the total face amount of the checks involved in the fraudulent scheme which he had been describing to the jury, rather than to the total amount of bank funds misapplied.

Appellee asserts, first, that there is no likelihood that any exaggerated charge which was not proved would have been prejudicial to the defendants, and second, that the amount mentioned in the opening statement was substantially proved. We are in agreement with appellee's first contention; as to the second, we need only say that a sufficient showing has been made in support thereof to establish that an exaggeration was not made in bad faith and did not constitute misconduct.

It should also be noted that government counsel stated, in his opening address to the jury:

"I want to say to you at the outset that an opening statement is not evidence, and I want you to remember that nothing I say here is to be regarded by you as evidence in the case because I am not a witness and I am not permitted to give evidence."

The admonition was repeated in his closing address to the jury:

"I suppose I need not tell you, as I said in the opening statement, what we say here in argument is not evidence."

As stated in Williams v. United States, 1925, 55 App.D.C. 239, 4 F.2d 432, 434:

"Even if the opening statement had contained matter harmful to the defendant, such matter, if not supported in any way by evidence subsequently introduced, instead of prejudicing the minds of the jury against the defendant, would rather tend to give the jury an unfavorable impression of the case for the government. * * * Witnesses not infrequently refuse to confirm under oath unsworn declarations made by them prior to taking the stand, and courts quite often on objection exclude testimony offered by counsel believing it to be admissible. Under such circumstances it would be going far indeed to hold that the declarations apparently made in good faith by government counsel in his opening statement amounted to misconduct and constituted reversible error."

Duvall v. United States, 3 Cir., 1938, 94 F.2d 911, upon which appellants rely, involved the admission as evidence of a large account which was almost entirely irrelevant to the issues and which, under the circumstances of the case, would tend to create an unfavorable impression of the defendant. No such situation is present here.

■ 3. Appellants maintain that government counsel tried on several occasions to inform the jury that the Mayfield Bank had closed and that the trial court erred in not granting a mistrial on that basis. However, on the only occasion when a question asked seemed clearly designed to educe such information, appellants' counsel immediately objected, and the objection was sustained. We agree with appellants that the closing of the bank was not relevant to the issues in the case, and it may be that the jury was able to infer from scattered remarks that the bank had closed. However, we do not find in the record of this case any such inflammatory remarks or gross and persistent misconduct as was involved in

Berger v. United States, 1935, 295 U.S. 78, 85, 55 S.Ct. 629, 632, 79 L.Ed. 1314, so as to call for the application of "stern rebuke and repressive measures".

■ 4. Appellants contend, for the first time on appeal, that there was no evidence to show the corporate existence of Scoblick Bros., Inc., or its responsibility for the acts of the individual defendants. It is contended that the corporate existence should have been proved in the manner suggested by Fed.R.Civ. P. 44, 28 U.S.C., made applicable to criminal proceedings by Fed.R.Crim.P. 27, 18 U.S.C. Civil Rule 44 provides a manner in which official records may be proved. It sheds no light on the question of when a fact must be proved by an official record.

The witness Senio testified that loans and checks were always signed "Scoblick Bros., Inc., by James, Frank or Anthony Scoblick", and that "Scoblick Bros., Inc." was the name of their business entity. We think this was sufficient to show the corporate identity and responsibility of Scoblick Bros., Inc., especially since the question was first raised on appeal. Appellants did raise questions in the court below concerning the corporate existence of the Mayfield State Bank. If there had been any serious question about the corporate existence of Scoblick Bros., Inc., it should have been raised at the same time.

Moreover, see 4 Wigmore, Evidence, § 1249, p. 478 (3d ed. 1940):

"[T]he fact that a * * * corporation exists may be proved without producing * * * the corporate charter."

■ 5. Likewise, appellants' contention that the corporate existence of the bank was not proved is without merit. The charter of the bank was introduced in evidence, showing that the bank had been chartered as a bank. It is true that the charter standing alone was not competent or sufficient to show the corporate existence of the bank at the times covered by the indictment because, by its

terms, the charter expired in 1943. However, in addition to the exhibit showing the incorporation of the bank, there was an abundance of testimony showing that the Mayfield State Bank operated as a bank at the times involved and that it was insured by the Federal Deposit Insurance Corporation. That was sufficient to show that the Mayfield Bank was an "insured bank" within the meaning of the applicable penal statutes. 18 U.S.C. §§ 656, 1005 (1952). Even if there were a defect in the charter of the Mayfield Bank, there is no reason to construe the word "bank" in the foregoing statutes to mean only a banking corporation with no defects in its charter. The interpretation that Congress intended to constitute as a crime the misapplication of funds of, or the making of false entries in the books of, an insured bank only if there were no defect in the bank's charter is untenable.

6. Finally, appellants claim that several errors were committed with respect to the court's instructions to the jury. A number of the objections now asserted were not brought to the attention of the court before the jury retired, as required by Fed.R.Crim.P. 30, and are without merit for the reasons stated in the opinion of the trial court. 124 F. Supp. 881, 888–891.

■ Appellants made timely objection to the court's refusal to charge that the witness Senio's testimony should be considered in the light of a hope for a possibility of leniency in his punishment for his confessed wrongdoing. Appellants stress the fact that government counsel subsequently recommended that Senio serve no time at all because, as government counsel stated:

"[T]he Government for many years has had a sort of policy that they believe that the man who comes forward and helps convict the others who deny their guilt, is entitled to some reward. * * *"

The court had instructed the jury:

"One witness, Michael Senio, testified who by his own confession is an accomplice. The testimony of an accomplice in crime should be received with caution, and you should carefully scrutinize the testimony of such accomplice before giving it much weight, but there is no rule of law forbidding a conviction on such testimony. If the manner of the witness in testifying and his appearance on the stand, impress you with the truth of the statements made beyond a reasonable doubt, you may convict on such testimony."

The question relevant to Senio's credibility was whether he had a hope of leniency as a reward for testifying, not whether such a hope was well founded. Cf. Gordon v. United States, 1953, 344 U. S. 414, 422, 73 S.Ct. 369, 97 L.Ed. 447. The trial court properly charged the jury that it could consider the interest of the witnesses in judging their credibility, and indicated that the testimony of Senio should be received with caution and carefully scrutinized before giving it much weight. To require the court further to charge that his testimony should be considered in the light of a hope for a possibility of leniency is tantamount to requiring the court to argue the facts of the case for the defendants. Senio's testimony could have been given in hopes of leniency or for other reasons. The court should not be required to suggest to the jury the possible motive for Senio's testimony most favorable to the defense. The court properly left all factual inferences relating to Senio's credibility for the jury's determination. It should be noted that no question is presented of refusing to allow appellants to prove facts from which the jury might infer that a hope of leniency existed in Senio's mind, as in Gordon v. United States, supra.

■ Appellants requested the court before the jury retired to charge that there must have been a specific intent on behalf of any defendant to defraud the bank before that defendant could be found guilty. The element of criminal intent appears several times in the charge of the court, which is quoted at length

at 124 F.Supp. 889 note 6. It is not suggested that the court's references to the element of criminal intent were in any way ambiguous or misleading, and they appear to be adequate and explicit.

The judgment of conviction will be affirmed.