**Felipe Rivera CORONADO, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21367.**

United States Court of Appeals
Ninth Circuit.

Feb. 21, 1968.

Peter Clarke, San Diego, Cal. (argued), for appellant.

Phillip Johnson (argued), Asst. U. S. Atty., Edwin L. Miller, Jr., U. S. Atty., Joseph A. Milchen, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before CHAMBERS and DUNIWAY, Circuit Judges, and HILL,* District Judge.

DUNIWAY, Circuit Judge:

Coronado was convicted on two counts of an indictment and he appeals. The first count charges Coronado and one Reinoehl with illegal importation of marihuana (21 U.S.C. § 176a) and the second charges Reinoehl with concealing and transporting illegally imported marihuana (id.) and Coronado with aiding and abetting. (18 U.S.C. § 2.) We affirm.

■ There is ample evidence to sustain the convictions. Briefly, it is that Reinoehl and Coronado drove in Reinoehl's car from Los Angeles to Mexico to buy marihuana. Coronado was to obtain the marihuana; Reinoehl supplied the car and most of the money. In Mexico, Coronado arranged to buy, and did buy, 3 kilos; Reinoehl's share was to be 2 kilos, Coronado's, 1 kilo. The two of them concealed the marihuana in Reinoehl's car. They then crossed the border at Tecate, the car was searched and the marihuana was found.

1. *Possession.*

■ It is claimed that there was no proof that Coronado had possession of the marihuana. Possession was not in issue in this case. There was direct proof of illegal importation and of Coronado's participation, and ample evidence from which to infer Coronado's guilty knowledge. Possession must be shown only when the government relies on the so-called presumption arising from possession created by section 176a. Here, there was no such reliance and the court did not instruct on the subject.

2. *Misconduct of the prosecutor.*

It is asserted that there was misconduct by the prosecutor in asking Coronado the following questions on cross-examination:

"Q. Mr. Coronado, do you recall being interrogated by Mr. Maxcy. * * *

* * * at the time that you were apprehended?

A. Yes.

Q. Do you recall making a statement to him that, quote, 'Even if I knew anything regarding the marijuana, or if I had smoked marijuana, I wouldn't tell you,' unquote?

MR. PAPPAS: Objection, your Honor. That is immaterial and irrelevant. He hasn't testified to any conversations with Mr. Maxcy.

THE COURT: Overruled.

THE WITNESS: I don't think that it was stated as such. I believe a part of it—I believe I told him, Mr. Maxcy —and he asked me about smoking weed, and I told him that had I smoked any weed that I would have registered crossing the border as a user. That's what I told him."

On redirect, Coronado's counsel went further into the matter:

"Q. You have testified that you did speak to Mr. Maxcy down there at the time of your arrest?

A. Yes.

Q. What did he say to you?

A. He said that if I was aware that I could receive twenty years for this offense, and I told him, 'No.'

And he said that it would go lighter on me if I would confess to the crime and get it all over with at this time, and I told him 'No,' I knew nothing about it.

Q. Did he ask you if the marijuana was yours?

A. Yes.

Q. And what did you reply?

A. 'No.' "

On rebuttal, Maxcy testified for the government that he had questioned Coronado, as follows:

"A. At that time I had present with me a State narcotics agent by the name of Frank Maldonado, who was present with myself and Mr. Coronado. I ad-

---

* Hon. Irving Hill, United States District Judge, Central District of California, sitting by designation.

vised him that I was a United States Customs Agent, introduced Mr. Maldonado to him, informed him that we were going to ask him pertaining to a quantity of marijuana that was found in a vehicle in which he was a passenger. I advised him that he did not have to answer any questions, that he did have the right to an attorney, and that if he did answer any questions, anything he said could be used against him in any further court proceedings.

Q. Did he make any remarks to you when you asked him some questions?

A. The interrogation was very brief. It commenced at approximately 5:25 P. M. on the afternoon of March 17th, and was to the effect that he and his companion had departed the Los Angeles area the previous afternoon, and at that time he stated he did not want to answer any further questions without first consulting an attorney.

I then asked him if he would tell us anything he knew about the marijuana. At that time he said if he would know anything about the marijuana that he didn't believe he would inform us."

To this there was no objection.

■ It is now claimed that the prosecutor was attempting to get the jury to infer guilt from Coronado's refusal to answer. To this contention we think that there are two sufficient answers. First, the objection in the trial court was not on that ground, so that the point was not properly raised. Second, the sting, if sting there was, was pulled by the court in its instructions:

"After taking a defendant into custody, arresting officers sometimes make accusatory statements to him, or in his presence, with a view to prompting some admission of guilt. An accusatory statement, as the term suggests, is a statement which in substance or effect accuses a person of guilt. The law does not require a defendant in custody to make any reply to an accusatory statement made to him, or in his presence, either orally or in writ-

ing, so neither the accusatory statement nor any failure to make reply thereto is evidence of any kind against the accused; that is to say, neither the accusatory statement nor any failure to reply thereto can create any presumption or permit any inference of guilt, and a defendant who is in custody has a perfect right not to make any statement at all."

The error, if any, we find not to be prejudicial.

3. *Instructions as to the testimony of an accomplice.*

■ The conviction can stand only if the testimony of Reinoehl was believed, and he was clearly an accomplice. It is asserted that the instructions on this matter were insufficient and erroneous. We quote them in full:

"All evidence of a witness whose self-interest or attitude is shown to be such as might tend to prompt testimony unfavorable to the accused, should be considered with caution and weighed with great care.

An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the criminal act charged. On the contrary, the testimony of an accomplice alone, if believed by you, may be of sufficient weight to sustain a verdict of guilty, even though not corroborated or supported by other evidence. However, you should keep in mind that such testimony is to be received with caution and weighed with great care. You should not convict a defendant upon the unsupported testimony of an accomplice, unless you believe the unsupported testimony beyond all reasonable doubt.

\* \* \* \* \* \*

Again, as I say, the question, the sole question to determine here is whom you are going to believe. Do you believe Mr. Reinoehl beyond all reasonable doubt, or do you believe the

defendant here? As I told you, Mr. Reinoehl is an accomplice, and you are to view his testimony with caution and with great care, and you have to be satisfied beyond all reasonable doubt here in order to establish the guilt of the defendant or that what he told you is the truth beyond all reasonable doubt."

When the instructions were completed, Coronado's counsel objected saying:

"I believe at one spot you said that the jury is left solely to believe Mr. Reinoehl or the defendant.

THE COURT: No, I filled it in by stating that they have to believe the defendant Reinoehl beyond all reasonable doubt.

MR. PAPPAS: I just understood you to say that the defendant told the truth beyond all reasonable doubt."

The prosecutor agreed and the court then re-instructed the jury on the question:

"Counsel are at some disagreement as to something I may have said. Mr. Pappas says that I said in order to acquit the defendant Coronado you had to believe his testimony beyond all reasonable doubt. I don't believe I said that. I said that in order to convict in this case it is my opinion that you had to believe Mr. Reinoehl, and that Mr. Reinoehl, being an accomplice, you must view his testimony with great caution and care and you had to believe him beyond all reasonable doubt.

In commenting upon the evidence, which you are at liberty to disregard, I think the question here is really as to whether you believe Mr. Reinoehl or whether you believe Mr. Coronado."

We think the instructions sufficient and the comment proper.

4. *Denial of trial by impartial jury.*

At the beginning of his instructions, the court said to the jury:

"Ladies and gentlemen of the jury: I think most of you have gone through these instructions and listened to them at least ten or twelve times during your past experience, but I hope I do not bore you, and I am sure you won't be bored."

From this, counsel asks us to infer that the jury would be predisposed to convict. We do not think that we should. The court's remark does not support the notion; nothing else in the record supports it either.

5. *Denial of speedy trial.*

Appellant was indicted April 14, 1965, arrested March 17, 1965 and tried June 15 and 16, 1965. Nothing in the record indicates that trial was improperly delayed. Appellant is really claiming undue delay on appeal. His counsel withdrew on July 26, 1965. Leave to appeal in forma pauperis was denied by the trial court in September, 1965. Leave of this court was asked in April, 1966. Counsel was appointed August 18, 1966 and leave granted in October. The transcript was provided on January 27, 1967. The delays are unfortunate, but they do not require reversal.

No other point merits consideration. Affirmed.