**UNITED STATES of America**

v.

**Ralph Louis ZARRA.**

**Crim. No. 14225.**

United States District Court
M. D. Pennsylvania.

March 31, 1969.

Bernard J. Brown, U. S. Atty., Carlon M. O'Malley, Jr., Asst. U. S. Atty., Scranton, Pa., for United States.

Meyers & Desfor, Harrisburg, Pa., for defendant.

SHERIDAN, Chief Judge.

Defendant, Ralph Louis Zarra, was charged in a one count indictment with aiding and abetting Frederick DeLancey Hesse, head teller of the Hershey National Bank, in the embezzlement of $101,000 from the bank, in violation of 18 U.S.C.A. §§ 656 and 2:

"THE GRAND JURY CHARGES:

"That from on or about December 1, 1963, to on or about November 1, 1965, at Hershey, Dauphin County, Commonwealth of Pennsylvania, in the Middle District of Pennsylvania and within the jurisdiction of this Court,

RALPH LOUIS ZARRA,

did aid, abet, counsel, command, induce or procure Frederick DeLancey Hesse, who, being an officer, that is, Head Teller and Assistant Cashier of the Hershey National Bank, Hershey, Pennsylvania, a National Bank whose deposits are insured by the Federal Deposit Insurance Corporation, wilfully and knowingly and with the intent to injure and defraud the said bank, did embezzle the sum of $101,000.00 of the funds and credits of the bank which had come into his possession and under his care by virtue of his position as such officer.

"In violation of Title 18 United States Code, Sections 656 and 2."

The jury returned a verdict of guilty. Defendant's motions for judgment of acquittal or for a new trial, and in arrest of judgment are before the court.

The Government introduced evidence from which the jury could have found the following facts.[1] Hesse was assistant cashier and head teller of the Hershey National Bank by whom he had been employed for 33 years. Defendant was secretary of the Fraternal Order of Eagles in Harrisburg. In 1961, defendant, with Hesse's knowledge, opened an account in the bank under the name "Howard Brooks." Shortly after it was opened, it was overdrawn on several occasions, but each time defendant gave money to Hesse to cover the overdrafts. On subsequent occasions, defendant told Hesse he did not have the money and asked him to "Hold them [checks] a couple of days." For a time defendant covered these checks, but later defendant did not, and it was too late under the regulations for Hesse to return the checks to the depository banks. In November 1962, the overdrafts on the Howard Brooks account amounted to $22,000. Hesse became panicky because he had used vault cash to pay the checks. After discussions with defendant, $22,000 was raised to replace the vault cash by obtaining $10,000 from a Mr. Leo, a debtor of defendant, and $12,000 in loans obtained by Hesse's children. Defendant agreed to pay Hesse the $12,000 at $150 a week. He made payments totaling $4,250, but about January 3, 1964, told Hesse he could not continue, that he was in need of an additional $6,000 to buy pinball machines, and asked Hesse to get it from the bank. Hesse said if he did and Mr. Baum, the cashier of the bank, learned about it, he would fire him. Defendant said then he would get a car and run down Mr. Baum. He also told Hesse there would be no payments on his money unless he got the $6,000, whereupon Hesse gave it to him in return for a percentage of income from the machines. Defendant made payments for several

---

1. Defendant did not testify and presented no evidence.

weeks until agents of the Pennsylvania Liquor Control Board confiscated the machines. Hesse then gave defendant $7,500 for more machines. Defendant made more demands for money. Hesse gave him $5,000 for a loan to Charles Ench, who was to pay a bonus of $1,000, $3,000 to pay a mortgage on defendant's house, $2,500 to buy a car, $1,300 for TV sets, $5,000 to run a dice game, money for a public license for the Eagles, $9,000 for a F. DeSanto, $4,800 for Dorothy Keim, $3,000 for William Fry, $4,-800 for John Ramsey, $6,000 for Max Waxman, $2,400 for Helen Carrichio, and others. Hesse never met these people. Defendant made the requests for the money. Hesse took it from vault cash and gave it to taxi drivers for delivery to defendant. Defendant knew all of this money was embezzled by Hesse from the bank.

Hesse concealed his shortages in this manner. He had an account with a small balance at the Lebanon Valley National Bank, Lebanon, Pennsylvania. At all times he had a check in his teller's cage for the exact amount of the shortages. If, for example, it was $90,000, he wrote a check for this amount and put it in his drawer and counted it as cash to balance each day's accounts. If the bank examiners came in, he dated the check and put it through the machine as a cash check so that it would take the place of cash. After the examiners counted the cash for that day, they released the cash and then he would take the cash out of the bank and have it delivered to the Lebanon bank and deposited in his account. He had time to accomplish this because his check went from the Hershey bank through Philadelphia to the Lebanon bank via the Federal Reserve. This took about three days. The ledger sheets of the Lebanon bank showed that the two largest deposits were $80,000 on October 4, 1965, and $91,200 on October 11, 1965. On at least three occasions defendant deposited the money for Hesse in the Lebanon bank. Hesse gave the money to a taxi driver who drove defendant either to the Lebanon bank to make the deposit, or to other area banks where defendant purchased cashier's checks or money orders with the cash and then deposited these in the Lebanon bank. On November 1, 1965, Hesse was in an automobile accident and suffered injuries which required his hospitalization. On November 4, Hesse told the president of the bank of his shortage, which then was $101,000. While in the hospital Hesse had several conversations with the defendant, and convinced him that the bank was not going to reveal the shortage. Subsequently, defendant sent about $4,000 to Hesse in the hospital to apply on the shortage. On January 19, 1966, defendant executed and delivered to the Hershey bank a note for the balance of $97,000.

The reasons advanced in support of the several motions will be considered together.

*Sufficiency of the Indictment:* Defendant argues that: the indictment is vague and uncertain and does not inform him of the charges against him; it is insufficient so as to permit defendant to plead the judgment in any other prosecution for the same offense; it fails to "establish" any necessary facts of the offense of Hesse whom defendant aided and abetted; it fails to set forth "factual evidence" of the common involvement of Hesse and defendant; it does not "indicate" the commission of any criminal act against the United States; and it is "factually insufficient" to charge defendant with violating the statutes enumerated.

It is not necessary to cover these arguments in detail. Suffice to say that an indictment is sufficient if it substantially follows language of the statute or uses words of similar import. United States v. Chunn, 4 Cir. 1965, 347 F.2d 717. An indictment charging a statutory offense in language and containing allegations necessarily or fairly import-

ing guilty knowledge need not contain formal words "knowingly," "wilfully," "feloniously" or "unlawfully." United States v. Amorosa, 3 Cir. 1948, 167 F. 2d 596; United States v. Barrow, E.D. Pa.1962, 212 F.Supp. 837, rev'd in part on other grounds, 3 Cir. 1966, 363 F.2d 62. The indictment charged defendant with aiding, abetting, counseling, commanding, inducing or procuring Hesse, an officer of the bank, who "wilfully and knowingly and with intent to injure and defraud the bank," embezzled the funds, in violation of 18 U.S.C.A. §§ 656 and 2. This charge of aiding and abetting was sufficient. United States v. Tornabene, 3 Cir. 1955, 222 F.2d 875; United States v. Johnson, 4 Cir. 1964, 337 F.2d 180, 196; United States v. Brown, 2 Cir. 1964, 335 F.2d 170; Logsdon v. United States, 6 Cir. 1958, 253 F. 2d 12; United States v. Barrow, supra; United States v. Quinn, E.D.N.Y.1953, 111 F.Supp. 870.

■ *Admissibility of Prior Transactions:* Defendant contends the evidence of the Howard Brooks account was inadmissible. This evidence was admissible on several grounds. In his opening to the jury, defense counsel stated that defendant would show that there were innocent "loans" between Hesse and defendant. The evidence showed that the transactions were quite different than "arm's length" loans. These prior transactions, involving as they did embezzlements from the same bank and closely related in time to the offense charged, also constituted similar offenses relevant to show knowledge and intent. 1 Wigmore, Evidence § 217, 2 Id. §§ 300–302; United States v. Weiler, 3 Cir. 1967, 385 F.2d 63, 68; United States v. Johnson, 3 Cir. 1967, 386 F.2d 630; United States v. Laurelli, 3 Cir. 1961, 293 F.2d 830; United States v. Stirone, 3 Cir. 1958, 262 F.2d 571, rev'd on other grounds, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252; Zamora v. United States,

10 Cir. 1966, 369 F.2d 855; Pardo v. United States, 5 Cir. 1966, 369 F.2d 922, 924; United States v. Byrd, 2 Cir. 1965, 352 F.2d 570. The prior misappropriations of funds by Hesse and defendant were relevant on whether defendant knowingly and intentionally aided and abetted, or counseled and procured Hesse in the misappropriations charged in the indictment. Finally, after Hesse refused to embezzle the $6,000 for the pinball machines, defendant threatened to go to the officials of the bank and tell them about the prior shortage. And, when at first Hesse refused the request for $7,500 for more machines, defendant said: " 'How do your children go to school?' I [Hesse] said, 'They walk.' He said, 'Well, you have to give me this money or I will have to take care of your children'—which I [Hesse] took as a threat to the children at that time." The jury was instructed on the limited purposes for which the evidence was admitted.

*Sufficiency of Evidence and Instructions-Testimony of Accomplice:* Defendant argues that the testimony of Hesse was not sufficient to sustain a conviction and complains of the court's failure to instruct the jury on several "rules" relating to the testimony of an accomplice. Defendant requested that the jury be charged:

"6. The Government's witness, Mr. Fred Hesse, has pleaded guilty to a charge of embezzlement; and his testimony in light of the alleged conspiracy must be scrutinized and examined very carefully. When considering the credibility, that is the believability, of the Government's witness, Mr. Fred Hesse, the testimony of a conspirator and accomplice, it should be corroborated by other testimony before giving too much credence to such testimony."

The court questioned this because it appeared to be a request to instruct the jury to disregard the testimony of an ac-

complice if it was not corroborated.[2] Defense counsel, however, was permitted to argue this point in his closing speech. The jury was charged:

"In connection with your consideration of evidence with respect to whether an embezzlement occurred and whether the defendant aided and abetted it, you have heard the testimony of Fred Hesse. He is what is known in the law as an accomplice. An accomplice is one who voluntarily participates in the commission or the planning of a crime.

"The witness Fred Hesse is an accomplice of the accused in this case. That is, he would be if you find he embezzled the money. As an accomplice his testimony must be carefully examined and weighed with great care. The testimony of an accomplice in connection with the crime charged, if believed by the jury, may be sufficient to sustain a verdict of guilty, even though not corroborated or sustained by other evidence. It is to be preferred that there be some corroboration of the substantive part of the accomplice's testimony. The extent to which there has been such corroboration, if any, is for the jury. However, corroboration is not absolutely necessary and a defendant may under our system be convicted on the uncorroborated testimony of an accomplice if the jury believe the testimony of the accomplice and if it establishes in the mind of the jury the guilt of the defendant beyond a reasonable doubt.

"Now you have the testimony of Mr. Hesse. Has that been corroborated? That is for you to determine. The Government argues that certain things are clear corroboration. They say that the taxi drivers to Hershey and bringing back envelopes is one; that Mr. Zarra in depositing the money in the Lebanon Valley Bank in the account of Mr. Hesse is more corroboration. They say that all these bank officers came in, they testified that these deposits were made, they were made by Mr. Zarra, and before making the deposit—there were large sums, you remember one was over $90,000, as I understand the testimony—before doing that, there were two or three officers came in here and testified that money orders were purchased at various banks. All of that, the Government says, is corroboration. That is up to you. It is for you to decide and determine. Does that corroborate Mr. Hesse and whatever other corroboration you have?"

After the charge, defense counsel asked that the court elaborate on the instructions and tell the jury that to convict, it must find that defendant knew the money was misappropriated from the bank, which the court did by reading defend-

2. "BY THE COURT:

\* \* \* \* \*

Where is your authority for No. 6 because it is contrary to the law as I understand it. The last part—it is exactly contrary to what I am going to tell them—
"BY MR. DESFOR:
The last sentence or the whole part?
"BY THE COURT:
The last sentence. (Continuing) It doesn't need corroboration at all.
"BY MR. DESFOR:
It does not require corroboration in order to make out a case. However, going to credibility, before the jury can give too much credence to this testimony for credibility, it should be corroborated.
"BY THE COURT:
Where is your authority for that?
"BY MR. DESFOR:
I will show Your Honor the case.
"BY THE COURT:
You show me the case and I will hold it. That is the same as saying you need corroboration. The cases say you don't.
"BY MR. DESFOR:
It goes only to a question of credibility, not to sufficiency of the evidence.
"BY THE COURT:
You say you have a case on it?
"BY MR. DESFOR:
Yes, I do.
"BY THE COURT:
It should have been in here. That is one thing I neglected to ask you to do. You should have given me a case on that. You can argue it."

ant's point No. 5;[3] other than that, only a general exception was taken.[4]

■ The only point raised at the trial which defendant still presses is that the uncorroborated testimony of an accomplice is of little or no weight in a determination of defendant's guilt. This, of course, is not the law in federal criminal prosecutions. Krulewitch v. United States, 1949, 336 U.S. 440, 69 S. Ct. 716, 93 L.Ed. 790; Caminetti v. United States, 1917, 242 U.S. 470, 37 S. Ct. 192, 61 L.Ed. 442; Dunn v. United States, 5 Cir. 1963, 318 F.2d 89. The instructions on the testimony of an accomplice were full and complete and afforded more than adequate safeguards to insure close examination of the accomplice's testimony. United States v. Bozza, infra; United States v. Vita, 2 Cir. 1961, 294 F.2d 524; cf. e. g., Manual on Jury Instructions—Criminal, § 6.07, 33 F.R.D. 577. Since there was substantial corroborating evidence,[5] the instruction need not even have been given; it was given because of the extremely unlikely event that the jury might disbelieve all the corroborating evidence and have before it, therefore, only the uncorroborated testimony of Hesse. Christy v. United States, 9 Cir. 1959, 261 F.2d 357.

■ In a point raised in his supplemental brief, defendant argues that the court erred when it told the jury that Hesse was an accomplice of the defendant because by implication this was telling the jury that defendant was guilty. The court told the jury that Hesse should be considered an accomplice of the defendant if it found that he embezzled the money. This was for the purpose, however of explaining the manner in which they should consider the testimony of an accomplice. To argue that in effect the court told the jury that defendant's guilt was established is to take this instruction completely out of context. The jury had previously been instructed on the presumption of innocence, the Government's burden to prove guilt beyond a reasonable doubt, that the jury were sole judges of the fact, the essential elements necessary to show the offense of embezzlement and the offense of aiding and abetting such embezzlement, etc. Hesse was not a co-defendant at the trial, nor was he charged as one in the indictment; he had previously pleaded guilty to the embezzlement and freely admitted it in his testimony. There was no evidence to the contrary. If defendant thought that this part of the charge, taken out of context, was improper, he should have called it to the attention of the court. He failed to do so. With a similar situation before it, the court in United States v. Rinaldi, 2 Cir. 1962, 301 F.2d 576 said:

"Taken as a whole the charge is plainly sufficient. If the language in the portions attacked, taken out of context, is in any way open to criticism, it could have been corrected had criticism of it been called to the attention of the court, or exception taken. Where no exception is taken, we will not consider

---

3. Defendant's point No. 5: "* * * if after considering all of the evidence presented you have a reasonable doubt as to whether the defendant had knowledge from December 1, 1963 to November 1, 1965 that the money obtained from Fred Hesse came from the Hershey National Bank, then you must find him 'not guilty.' "

4. Tr. 358–9.

5. Hesse's testimony on the disposition of embezzled funds was corroborated in part by the testimony of the taxi drivers, Harry King, Edward Placido and Edward Darrow; by Lloyd Miller and Melvin Lamb of the Farmers Bank and Trust Company of Hummelstown; Ronald L. Hesse and Dorothy Watkins of the Hummelstown National Bank; Clyde W. Gabel of the Dauphin Deposit Trust Company, Eileen Heaps and Jay Blough of the Lebanon Valley National Bank. These witnesses testified to various transactions involving monies deposited in Hesse's account in the Lebanon Bank, including that defendant used taxi drivers to pick up cash from Hesse at the Hershey bank, and that the cash was used by defendant to purchase bank checks in large amounts In addition, there was an abundance of documentary corroborating evidence.

alleged errors in the charge unless substantial prejudice resulted. * * * Reference to the involvement of a witness not charged with the crime was called for, in order to meet the need for cautionary instructions on the weight to be given testimony of an accomplice, and certainly was not harmful to defendants. * * *"

Moreover, defendant specifically requested the court to instruct the jury that Hesse was an accomplice. In point No. 6, quoted above, defendant requested in part: "* * * When considering the credibility, that is the believability of the Government's witness, Mr. Fred Hesse, *the testimony of a conspirator and accomplice*, it should * * * [etc.]." (Emphasis supplied.) If this was error, defendant asked for it, and cannot complain. United States v. Scoblick, M.D.Pa. 1954, 124 F.Supp. 881, affd 3 Cir. 1955, 225 F.2d 779. United States v. Gorman, 7 Cir. 1968, 393 F.2d 209; cf. United States v. Grosso, 3 Cir. 1966, 358 F.2d 154, rev'd on other grounds, 1968, 390 U.S. 62, 88 S.Ct. 716, 19 L.Ed.2d 906.

▮▮▮▮ Defendant relies on United States v. Balodimas, 7 Cir. 1949, 177 F.2d 485.[6] That case is distinguishable in several important respects and is not controlling. First, in Balodimas, an income tax evasion case, the witnesses testified to procedures under which, at defendant's instructions, they withheld cash and checks from each day's business; the defendant freely admitted this but offered an explanation which, if believed, would have exonerated him. The trial court characterized the witnesses as lawbreakers. The court of appeals said:

"* * * Ordinarily in a criminal trial there is no question but that a crime has been committed; the question at issue is whether it was committed by the defendant. Here, we have the reverse of that situation. The question for determination was whether a crime had been committed. The effect of this instruction was to

resolve that question in the affirmative. * * *"

In the instant case that was no evidence which would have justified a finding that an embezzlement had not occurred. Hesse was an admitted lawbreaker. The real question was whether defendant aided and abetted and the jury was fully instructed on this. Second, the record in Balodimas did not support the Government's argument that the instruction given had been requested by defendant. It is true that in dictum the court stated that such a request would not appear to alter its opinion, and also rejected the argument that defendant failed to object to the instruction, because the instruction constituted plain error. Each case, however, must rest on its own facts. The rule that an appellate court, in its discretion, may recognize matters which were not objected to or even which were invited by a defendant, when they constitute plain error, is subject to qualification. Plain error will require reversal only when a manifest miscarriage of justice would result, viewed in the light of all the evidence, and the effect which the erroneous instruction would have on the verdict. Here, the evidence was overwhelming that defendant aided and abetted the commission of the crime, and the instruction, even if erroneous, could not have influenced the verdict. In United States v. Grosso, supra, the court said:

"However, if appellant's counsel was of the opinion that the errors were prejudicial it was his obligation to interpose a timely objection and seek corrective action by the Court. * * * He should have taken this course when he learned of the errors, but failed to do so. A defendant may not sit idly by in the face of obvious error and later take advantage of a situation which by his inaction he has helped to create. * * *

"Although not required to do so, we are empowered to consider the alleged errors on the merits if they affected

6. Cf. also United States v. Battaglia, 7 Cir. 1968, 394 F.2d 304.

the 'substantial rights' of the appellant. * * * The power is discretionary and should be exercised only in those situations in which the failure to do so would result in a manifest miscarriage of justice. * * * We do not have such a situation in the instant case.

"We find upon our review of the record that the evidence as to the appellant's guilt was overwhelming and that therefore there was no reasonable likelihood that the judge's instruction to the jury influenced the verdict. We are of the opinion that under the circumstances reversal on the ground urged is not warranted. * * *" (Citations omitted.)

And in Lyons v. United States, 9 Cir. 1963, 325 F.2d 370, the court in its instructions assumed an important, but uncontroverted, fact material to defendant's conviction. The court of appeals noted the implied consent of defendant's counsel to the instruction:

"Thus, appellant, through his attorney, impliedly consented to the proposed instruction concerning his professional status. This implied consent, when considered together with his failure to object to, and apparent acquiescence in, the instruction, when it was actually given, shows that ultimately appellant's status as a suspended attorney was an admitted and uncontroverted fact.

"Although an instruction which assumes a fact which is in issue is prejudicially erroneous, Roe v. United States, 287 F.2d 435 (5th Cir. 1961), Carothers v. United States, 161 F.2d 718 (5th Cir. 1947), an instruction, such as the one given here, which assumes an admitted or uncontroverted fact, is not reversible error. Malone v. United States, 238 F.2d 851 (6th Cir. 1956). United States v. Jonikas, 197 F.2d 675 (7th Cir. 1952), cert. denied 344 U.S. 877, 73 S.Ct. 171, 97 L.Ed. 679. Nordgren v. United States, 181 F.2d 718 [12 Alaska 671] (C.A.9 1950).

"Moreover, in the course of its instructions, the trial court several times advised the jury that it is the sole judge of the weight of the evidence and the credibility of witnesses. Such an instruction would not cure a prejudicial error in a charge, United States v. Gollin, 166 F.2d 123 (3rd Cir. 1948), cert. denied 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151; but in a case such as this, it lends support to the conclusion that there was no 'miscarriage of justice.' Herzog v. United States, supra, [235 F.2d 664] 667 (on rehearing).

"In view of the foregoing, we hold that the trial court did not commit plain or reversible error in including the instruction set out above in its charge to the jury."

See also United States v. Rinaldi, supra.

The instruction was beneficial to defendant. If the court had left to the jury the question of whether Hesse was an accomplice, and they found he was not, the admonition to scrutinize his testimony with great care and that corroboration is preferred would not be applicable. In Coleman v. United States, 9 Cir. 1966, 367 F.2d 388, the court said:

"* * * Similarly, his cautionary instruction concerning testimony of an accomplice was proper, for the jury might have considered the government's witness Hunter, who wrote the holdup note, a participant in the crime. But even if abstract, the instruction was beneficial rather than harmful to defendants. * * *"

▮ Finally, an instruction as a matter of law that a witness is an accomplice, where the fact of his participation in the crime charged is uncontroverted, is proper.[7] In United States v. Scoblick, supra, the court charged the jury:

"'One witness, Michael Senio, testified *who by his own confession is an accomplice.* The testimony of an accomplice in crime should be received

---

7. See Manual on Jury Instructions—Criminal, § 6.07 (Alternative Instruction), 33 F.R.D. 577.

with caution and you should carefully scrutinize the testimony of such accomplice before giving it much weight, but there is no rule of law forbidding a conviction on such testimony * *.' " (Emphasis supplied.)

The court of appeals (United States v. Scoblick, 3 Cir. 1955, 225 F.2d 779, 783) approved of this instruction. In Coronado v. United States, 9 Cir. 1968, 390 F.2d 16, 18, the court approved the following: —

> " 'Again, as I say, the question, the sole question to determine here is whom you are going to believe. Do you believe Mr. Reinoehl beyond all reasonable doubt, or do you believe the defendant here? As I told you, Mr. Reinoehl is an accomplice, and you are to view his testimony with caution and with great care, and you have to be satisfied beyond all reasonable doubt here in order to establish the guilt of the defendant or that what he told you is the truth beyond all reasonable doubt.' "

In United States v. Agueci, 2 Cir. 1962, 310 F.2d 817, 833, the court approved this instruction:

> "* * * Judge Herlands' instruction to the jury was more than adequate on this score. He stated, 'The testimony of Palmeri and Rinaldo, who are accomplices by their own admission, must, as a matter of law, be considered by you with close and searching scrutiny and caution.' * * * "

See also, Green v. United States, 121 U.S. App.D.C. 111, 348 F.2d 340; Coleman v. United States, supra; United States v. Rinaldi, supra.[8]

■ Defendant says Fred Hesse, Jr. should also have been considered an accomplice, and the failure of the court to so instruct the jury was particularly significant because corroboration of Hesse could not come from Hesse, Jr., if the jury found he was also an accomplice. Defendant relies on Arnold v. United States, 10 Cir. 1938, 94 F.2d 499. There are several answers to this. The testimony of Hesse was corroborated by the testimony of many witnesses other than Hesse, Jr. The uncorroborated testimony of Hesse alone was sufficient to convict. United States v. Gallo, 2 Cir. 1941, 123 F.2d 229, 230 (rejecting the rule of Arnold, supra). Defendant never requested such an instruction related to Hesse, Jr., either in his points for charge or at side bar after the charge was completed. There is nothing in the record to indicate that Hesse, Jr. could have been an accomplice. He may have been guilty of misprision of a felony when, after he acquired knowledge that his father had embezzled $22,000 *not* the subject of this indictment, he assisted his father in paying back the money, without reporting the embezzlement to the authorities.

■ Defendant for the first time raises other matters which he alleges should have been charged with respect to the corroboration of the testimony of an accomplice. These matters will not now be considered. Rule 30, Fed.R.Crim.P. United States v. Scoblick, 3 Cir. 1955, 225 F.2d 779, 783; Mims v. United States, 9 Cir. 1958, 254 F.2d 654; cf. Ortiz v. United States, 9 Cir. 1966, 358 F.2d 107; United States v. Bozza, 2 Cir. 1966, 365 F.2d 206.

*Cross-Examination of Hesse:* The first questions to Hesse on cross-examination brought out that he was married, lived with his wife and was a good family man.[9] Defendant then attempted to bring

---

8. In Gardner v. United States, 10 Cir. 1960, 283 F.2d 580 and United States v. Callis, 6 Cir. 1968, 390 F.2d 606, the court's *refusal* to instruct that certain witnesses were accomplices as a matter of law, when the fact of their participation in the offense charged was disputed, was assigned as error on appeal.

9. "BY MR. MEYERS:
"Q. Mr. Hesse, you are married?
"A. Correct.
"Q. Live with your wife?
"A. Correct.
"Q. You have six children?
"A. Yes sir.
"Q. And you consider yourself a good family man?
"A. I do."

out that Hesse was with another woman at the time of the accident. The Government objected and was sustained. At the trial, counsel stated that the door had been opened to impeach Hesse's testimony that he was a good family man and that defendant had threatened his children.[10] The offer was not to prove that Hesse needed money for another woman and thus to discredit his testimony that he embezzled for defendant's use, as argued in defendant's brief. The ruling was proper. Hesse never suggested on direct examination that he was a good family man.[11] The inquiry was far beyond the scope of direct examination, and was purely a collateral matter which defendant interjected into the case. It was not relevant to Hesse's testimony that he feared for his children's safety. It does not follow that if Hesse was involved with another woman that he would be less likely to be coerced into action by threats of violence to his children, as argued by defendant.

 Even if the testimony were relevant, it still would be inadmissible. A trial court has wide discretion in ruling on relevancy and materiality. United States v. Gipson, 7 Cir. 1967, 385 F.2d 341. It may exclude evidence which is only slightly probative if its introduction would confuse or mislead the jury by focusing its attention on collateral matters, and which would be irrelevant and prejudicial when considered in light of the totality of the evidence. United States v. Bowe, 2 Cir. 1966, 360 F.2d 1; Yates v. United States, 10 Cir. 1966, 362 F.2d 578; United States v. Costello, 2 Cir. 1955, 221 F.2d 668. In Costello, the court, in an opinion written by Judge Learned Hand, said:

> " * * * It is hornbook law that, although a party may offer evidence rationally relevant to the issue, that does not inevitably make it admissible. It may, just as Judge McGohey thought

in this instance, tend rather to mislead than to enlighten the jury. When the prosecution showed the amount of his gross income during the eight years, it did so by proving in detail the purposes for which he spent his money, and thus supplied just the element that was missing from the assessments. It was certainly within the judge's discretion to decide whether to admit them until this omission was supplied; and we are in entire accord with his ruling."

In Carter v. United States, 9 Cir. 1967, 373 F.2d 911, in an effort to discredit the testimony of a key government witness in a forgery case, counsel attempted to show on cross-examination that the witness, after having been divorced from his first wife, resumed relations with her without remarriage. The court said: "As to the attempted examination of Keynerd on the nature of his relationship with his former wife, the subject was irrelevant to the issues with which the trial was legitimately concerned." In United States v. Kompinski, 2 Cir. 1967, 373 F.2d 429, the trial court permitted testimony that one defendant, Evanco, a married man, frequently visited the home of a Mrs. Macey. The trial court found, however, that the testimony was probative of the fact that Evanco had access to the Macey phone through which he had received a call from a Chicago phone available to a co-conspirator. Even then, the court weighed the evidence in the light of its possible prejudicial effect. In approving the ruling the court of appeals said:

> " * * * Mrs. Judge's testimony had some probative value, showing that Evanco had access to the Macey phone through which he had received a call from a Chicago phone available to Burns. The trial Judge, in his discretion, felt that the probative value of the evidence outweighed the possible prejudice to Evanco which might arise

---

10. Tr. 116–118.

11. Cf. Moore v. Chesapeake & O. Ry., 4 Cir. 1950, 184 F.2d 176, at page 179, where the court said: "It is worthy of

note that these were the words of counsel, and not of the witness. They were carefully framed, for no other apparent purpose than to provide an excuse to contradict the engineer's testimony."

through any inferences as to the nature of his relationship with Mary Macey. The record is clear that no such inferences were suggested to the jury. * * * "

The cases cited by defendant are distinguishable. In McCowan v. United States, 9 Cir. 1967, 376 F.2d 122, the defendant, as a part of his defense to illegally taking from the mails a package addressed to one Joan Ansel, contended that he needed to see the package because he was conducting an official police investigation of the young girl who had mailed the package. The court said:

"* * * Tending to undermine this contention was the fact, which the Government sought to disclose on cross-examination, that during the time McCowan said he was investigating this young lady, he was making love to her. Under the circumstances this was proper cross-examination."

It is clear that the probative value of the evidence bearing on an issue, outweighed the prejudicial effect of the testimony. The same is true of McFarland v. United States, 1949, 85 U.S.App.D.C. 19, 174 F.2d 538, where the court said:

"We find further error in the court's refusal to permit cross-examination of Mrs. Conradi as to whether she and McFarland were living in an illicit relationship in Maryland during the latter part of 1945 and the first few months of 1946. That relationship, if it ever existed, apparently had long since terminated when she testified before the grand jury and at the trial, for otherwise it may be supposed that she would not have appeared against the appellant. Consequently, her admission of an illicit affair, had it been obtained, might have tended to show McFarland merely sojourning in Maryland for an extra-marital adventure. It might have tended also to show bias and prejudice on the part of Mrs. Conradi. Cross-examination might, therefore, have elicited information affecting Mrs. Conradi's credibility and should have been permitted."

The very next question to Hesse on cross-examination was: "Mr. Hesse, did you ever tell Mr. Zarra—". The court immediately called counsel to side bar and requested him to state what he intended to ask. Counsel replied: "I will ask him: Did he ever tell Zarra there was an elderly woman whose husband had died and that he was in charge of the fund or money which had a depository in the Hershey National Bank and she wasn't satisfied with the rate of interest she was getting?—in accordance with my opening." The court ruled that he could ask this question. Because of certain statements made at this side bar conference, the court directed counsel for both parties when asking this type of question to come to side bar first and state the question to the court.[12] If counsel had

12. "BY THE COURT:
I will permit that.
You understand what I am getting at? I don't want this type of thing to take place in this lawsuit. For instance, you ask the question "Did so and so ever tell you something?' and the man denies it. There is a statement you don't intend to prove the affirmative of. You see what I mean?
"BY MR. MEYERS:
I don't know what I intend to prove.
"BY THE COURT:
Suppose he denies this.
"BY MR. MEYERS:
If he does deny it, then it is a question for the jury.
"BY THE COURT:
Are you prepared to prove if he denies this that he said it?

"BY MR. MEYERS:
Am I prepared to prove if he denies this that he said it? I hope to prove it.
"BY THE COURT:
Would you state on the record you are going to have testimony to prove it?
"BY MR. MEYERS:
My client has told me the story. I think on the basis of that that I should be allowed to cross-examine this man.
"BY THE COURT:
I am going to suggest this then. Every time from here on that you want to ask a question of that type—of this or that type, 'Did you tell so and so something?', all I ask is that you come to sidebar first and tell me what your question is going to be.
* * * * *

no intention of introducing competent evidence to establish the fact assumed or supplied by the question, the effect would be to bring to the jury's attention facts supplied only by the unsworn assertions of counsel. 3 Wigmore, Evidence § 780; 6 Ibid., § 1808; cf. Pruett v. State, 1948, 33 Ala.App. 491, 35 So.2d 115; State v. Singleton, 1947, 66 Ariz. 49, 189 P.2d 920; Seligson v. Young, 1959, 189 Pa. Super. 510, 151 A.2d 792; Di Bono v. Phila. Transp. Co., 1947, 356 Pa. 204, 51 A.2d 768. Counsel was not precluded from asking the questions; he was merely instructed to approach the bench so the court could rule in advance. In his brief, counsel argues that this limited the cross-examination, and that compliance with the instruction would make him appear ludicrous in front of the jury. Cross-examination was not limited. Counsel conducted an extensive cross-examination of Hesse and cross-examined the other witnesses to the extent he thought necessary. Only twice after the side bar conference did he inquire of the court whether he was permitted to ask a certain question. The court did not know whether the defendant would take the stand, and since counsel was of the opinion that he had an absolute right to cross-examine Hesse on any statement attributed to Hesse by defendant, the court acted properly in attempting to contain the trial within proper bounds. Compli-

ance by counsel was a simple matter. All he had to do was to collect all statements which defendant said Hesse made, and in one side bar conference inform the court.

The motion of defendant to set aside the verdict and enter judgment of acquittal, and in the alternative the motion for a new trial will be denied.

"BY THE COURT:

I think I have made myself clear. Cross-examination is not being limited by this. All I am saying to you—and this is prompted by you a little bit. You attempted to get into this record—you asked this witness: 'Are you a good family man?' You attempted to show what you said at sidebar—he was out with another woman. I think it is wrong and I have so ruled. You just started to say to this witness on the stand, 'Did you ever tell Mr. Zarra—' All I am asking you to do in that type of question is that you first come to sidebar so that I can hear what you intend to ask. I am only attempting to keep this record straight. I am going to let you ask the one you said you would ask about an elderly widow.

"BY MR. MEYERS:

This man has portrayed himself as being pious, pompous and a good family man. He has given that impression.

"BY THE COURT:

If he has, you brought that out.

You apparently won't listen to me. I am only asking you to come to sidebar. There may be some statement that can't be brought out. I don't say you are going to do it. Under your theory you may want to ask certain things that I don't think you should. I am trying to keep this straight. That is all I am trying to do. I will put the same restriction on Mr. O'Malley. If he wants to ask any witness whether he has told something to someone else. I want him to come to sidebar unless he will state upon denial by that witness that he is prepared to prove that."