UNITED STATES of America, Plaintiff-Appellee,

v.

Horace RINALDI and Ralph Carbone, Defendants-Appellants.

No. 287, Docket 27266.

United States Court of Appeals Second Circuit.

Argued March 30, 1962.

Decided April 18, 1962.

John T. Curtin, U. S. Atty., Western District of New York, Buffalo, N. Y., for plaintiff-appellee.

Michael A. Querques, Orange, N. J., for defendants-appellants.

Before MEDINA, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

From concurrent sentences of 5 years for conspiracy to forge and utter United States Savings Bonds and 7 years on 44 counts of aiding and abetting the forgery or the uttering of the forged bonds, entered in the Western District of New York, John O. Henderson, Judge, defendants Horace Rinaldi and Ralph Carbone appeal. Appellants, although no exceptions were taken to the charge at the time, claim plain error in the charge in four respects. They also claim error in denial of a motion for mistrial after a prejudicial question as to Rinaldi's prior criminal record had been asked by the prosecutor of Rinaldi's wife, and answered in the affirmative. We find no plain error in the charge, and find no prejudice to Carbone from the question asked Mrs. Rinaldi, but find error in the failure to grant a new trial to Rinaldi. We affirm the judgment as to Carbone, reverse and remand for new trial on the appeal of Rinaldi.

The Government's evidence was in part as follows:

The U. S. Savings Bonds in question, owned by a Mr. and Mrs. Steffee of 1100 Grand Avenue, Plainfield, New Jersey, and kept in a metal box at that address, disappeared on the night of December 16, 1960. Rinaldi resided in East Orange, New Jersey, Carbone in Irvington, New Jersey. In late December, Rinadi, one Savo, Grace Insinnia and Patricia Cusano had a conversation about cashing bonds when Carbone should get out of a hospital. In early January they discussed with Carbone cashing bonds in New York state, for which Carbone could supply drivers' licenses. On January 8, 1961 Rinaldi, Carbone, Savo, Grace Insinnia and Patricia Cusano drove from Newark, New Jersey to Buffalo, New York, carrying the bonds in the car. In Buffalo Mrs. Insinnia was dropped at her brother's house. An apartment house in Buffalo was picked out, its zone number ascertained from a mailman and New York drivers' licenses were prepared on blank forms in the name of Mrs. Steffee, payee on the bonds, but using the Buffalo apartment house address. The Cusano woman went into a Buffalo bank with 20 bonds to cash them but was refused, having only one half of a driver's license. Receiving the second half of the license from Carbone she was successful in a second bank in an attempt to cash 15 of the bonds, receiving $1,209.20. She gave the money to Savo, received 20 more bonds and tried another bank, being unsuccessful this time because the license was not signed. The next day she was arrested while signing bonds which she was attempting to cash in another bank. The signature of the payee on each of the bonds was a forgery.

On trial Rinaldi's wife was permitted to testify on direct examination about her husband's employment, health and family life, as well as to his whereabouts January 7, the latter in an apparent effort to contradict testimony as to a conference he purportedly attended at Savo's residence on that day. On cross-examination the following occurred:

"Q. Mrs. Rinaldi, what other name is your husband known by? A. Other than Horace?

"Q. Yes. A. Nickname?

"Q. Yes. A. Sonny.

"Q. Sudsy? A. Sometimes.

"Q. Has your husband ever been convicted of a crime? A. Yes.

"Mr. Pacini: If the Court please, I move for the withdrawal of a

juror, and a mistrial. It is absolutely improper, incompetent, and Mr. Stenger knew that.

"The Court: This is a serious area that the District Attorney has approached. I deny your motion for a mistrial. I want to instruct the jury that you must make a conscientious and serious effort to reject from your minds the question and the answer which this woman gave to (1213) the District Attorney's inquiry. Now, you must make a conscientious effort to do that, because that is a completely improper examination of this witness. The other witness was asked that by the defense, that is his privilege, concerning the witness, Mrs. Carbone. It is not the privilege of the Government to ask this woman concerning any record of her husband, if there was such. You don't know anything about that. She has made an answer rapidly, and counsel has made a serious motion to declare a mistrial. I am relying on you, rather than grant that motion, to conscientiously and seriously take that out of your minds. It is a very serious concern that you have now. Do you wish anything further said?

"Mr. Pacini: No, your Honor.

"The Court: Proceed."

■■ The Government seeks to advance the claim that the question was proper because Rinaldi's character had been put in issue on direct. There was, however, no reference in the testimony to his character. Of course, any conduct of an individual may bear to some degree on his character, but here only indirectly and not in any way to justify reference to any prior criminal record. Improper introduction of evidence of a defendant's past criminal record is ground for a new trial. Cautionary instructions will not cure the error. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); United States v. Tomaiolo, 249 F.2d 683 (2 Cir. 1957); United States v. Jacangelo, 281 F.2d 574 (3 Cir. 1960); Helton v. United States, 221 F.2d 338 (5 Cir. 1955). The conviction of Rinaldi must therefore be reversed and his case remanded for a new trial.

■ This error, however, cannot be said to have damaged Carbone. The only testimony as to his criminal record was that he had none. The jury were instructed to consider and return verdicts on each count as to each defendant separately, and did so. Carbone's conviction must therefore stand unless there was reversible error in the charge.

In four instances defendants claim plain error in the charge: (1) a charge that a witness is presumed to be truthful, (2) that reasonable doubt must arise out of something tangible in the evidence, (3) a charge concerning determination of guilt of a Government witness not charged, and (4) a charge that the jury should not reveal how they stood until a unanimous verdict was returned in open court.

■ Taken as a whole the charge is plainly sufficient. If the language in the portions attacked, taken out of context, is in any way open to criticism, it could have been corrected had criticism of it been called to the attention of the court, or exception taken. Where no exception is taken, we will not consider alleged errors in the charge unless substantial prejudice resulted. United States v. Vasilaky, 168 F.2d 191 (2 Cir. 1948); United States v. Monroe, 164 F.2d 471 (2 Cir. 1947) cert. denied 333 U.S. 828, 68 S.Ct. 452, 92 L.Ed. 1113; Coffman v. United States, 290 F.2d 212 (10 Cir. 1960). The reference to a presumption that a witness is telling the truth, in conjunction with other instructions as to weighing testimony, plainly had no weakening effect on the presumption of innocence, as defendants fear, and was not clearly erroneous. The reference to tangible evidence as a basis for reasonable doubt would be questionable in the abstract, but here it was obviously used as an antonym of emotion, whim, fancy or caprice and so used was correct. Reference to the involvement of a witness not charged with the crime was

called for, in order to meet the need for cautionary instructions on the weight to be given testimony of an accomplice, and certainly was not harmful to defendants. The attack on the instructions concerning jury secrecy as coercing unanimity is far fetched indeed. We find no error in the charge. Certainly there is here no plain error affecting substantial rights of defendants which the court is required to notice in spite of failure to make timely objection under Federal Rules of Criminal Procedure 52(b), 18 U.S.C.A.

Judgment affirmed as to defendant Carbone, reversed and remanded as to defendant Rinaldi.