**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Guido FIDANZI, Defendant-Appellant.
No. 16984.**

United States Court of Appeals
Seventh Circuit.

June 23, 1969.

Rehearing Denied July 29, 1969.

Gerald M. Werksman, Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Richard G. Schultz, Asst. U. S. Atty., Chicago, Ill., for appellee, John Peter Lulinski, Michael B. Nash, John B. Simon, Asst. U. S. Attys., of counsel.

Before CASTLE, Chief Judge, and KILEY and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Guido Fidanzi was found guilty by a jury of filing a fraudulent income tax return for 1961 and of wilful failure to file returns for 1963, 1964, and 1965.

Fidanzi does not challenge the sufficiency of the evidence, but claims improper argument of counsel, improper admission of certain evidence, refusal to suppress a statement made to a special agent, and wiretapping which requires dismissal.

1. *Improper argument.* The government proved receipt by Fidanzi in the years in question of substantial amounts of cash, and showed the nature of the transaction giving rise to each payment. The only receipt not obtained by deception was $1,300 won at a race track in 1963. The other fourteen transactions were swindles of one sort or another. Typically the victim paid cash in advance for a promised quantity of merchandise which was never delivered or for commissions for obtaining loans or investment funds which were never brought forward. Or a victim with standing at a bank was persuaded to cash a check which turned out to be worthless. The amounts involved in each transaction varied, but ranged up to $8,000.

In order to prove the charges, it was appropriate to prove not only the receipt of funds, but also the character of the transaction to the extent necessary to establish that the money received was income. In addition the circumstances of the transaction may have some bearing on the question of intent involved in the failure to report the income. The prosecutor could properly outline the anticipated evidence in his opening statement, and, in his closing argument, remind the jury of the evidence which had been produced and attempt to persuade them to draw legitimate, relevant inferences.

The income which Fidanzi had received was not of the character ordinarily earned in employment or derived in the ordinary course of business activity. It resulted from swindling and confidence games carried on as a means of livelihood. In one instance the evidence could legitimately be said to show extortion. It was not out of bounds for the prosecutor to point out in argument to the jury that the receipts from this type of activity, though extraordinary, was income nonetheless for the purpose of the case on trial.

We find little if anything to criticize in the prosecutor's opening statement. We think he did succumb, to a degree, in his closing argument, to the obvious temptation to arouse sympathy for Fidanzi's victims and to play upon the unsavory character of the activities. Some of his remarks, by reason of repetition and emphasis of the fact that Fidanzi had cheated his victims, and practiced extortion, exceeded in degree, at least, what would be deemed legitimate for the purpose of arguing the existence of fraudulently unreported income in 1961 and sufficient income in the other years so that the duty to file and wilfulness of the failure were established.

Fidanzi was entitled to a fair trial and a verdict which was not induced by appeals to sympathy, passion, and prejudice. If this were a close case in terms of the appropriate issues, Fidanzi's claim of improper argument could not be overlooked. The case, however, is a very strong one. None of the material evidence is in dispute, and in many of the transactions there is documentary or other corroboration for the critical testimony. Our reading of the record has convinced us that the jury could not have conscientiously decided to acquit, and that there is no reasonable possibility that the verdict resulted from an appeal for sympathy for the victims or disapproval of Fidanzi's way of life.

2. *Claim that evidence was improperly admitted.* One witness testified that Fidanzi told the witness that one Cioffi had made a deal for 40 television sets for a total of $8,000. The witness said he did not have the money. Fidanzi said the deal had already been made and the witness "would have to come up with the $8,000." Later they talked by telephone. When asked to relate the conversation, the witness quoted Fidanzi as saying "a deal was a deal, and if I didn't want to find myself in a ditch alongside of Cioffi, that I would go along with the deal that Cioffi had made."

A motion to strike was made and overruled. The witness continued and testified that he told Fidanzi he would come up with $4,000 and take half the sets.

After the $4,000 was paid, Fidanzi called again, threatening the loss of the first $4,000 if the second was not paid. The witness paid again, but never got the sets.

It is argued that the testimony of the threat about the ditch was inadmissible because it was evidence of the crime of extortion. The conversation, however, was an integral part of the transaction giving rise to the payment of money to Fidanzi, and clearly relevant to the issues in the case. It was not rendered inadmissible because it tended to show Fidanzi guilty of some other crime.[1]

3. *The statement to an IRS special agent.* A special agent interviewed Fidanzi on June 14, 1965 and was permitted to testify to statements by Fidanzi at that time. The agent did not warn him concerning the possible use of his statements to incriminate him.

Fidanzi's position is "that a taxpayer is entitled to a warning against self-incrimination regardless of who the principal target of a criminal investigation is when he is invited to give answers at an interview with a Special Agent of the Internal Revenue Service."

 If there be any merit to the stated proposition in this area of the law, there can be none where the combination of facts is true, as in this case, as follows: (1) the special agent truthfully told defendant that the investigation related to the tax liability of another taxpayer, (2) defendant was not in custody, though present at an IRS office, and (3) defendant had counsel with him at the time of the interview.

4. *Trespassory eavesdropping.* Before trial the government turned over to defense counsel five logs containing eavesdropping material pertaining in varying degrees to Fidanzi. In presenting its case the government put on evidence in each instance to show that its evidence was not obtained as a result of the eavesdropping. Although trial counsel indicated the absence of taint had not been adequately proved, the proof was deemed sufficient by the judge, and on appeal that contention seems to have been abandoned. His position on appeal is that dismissal of indictments against persons who have been the victims of eavesdropping is the only way in which the evils of eavesdropping can be curbed; that the government may not have turned over all the logs affecting a defendant; and that dismissal should be ordered without regard to whether convictions can be traced directly to the wiretapping results which are made available.

We are not persuaded that so drastic a rule is required.

The judgment is affirmed.

1. See United States v. Skidmore (7th Cir., 1941), 123 F.2d 604, cert. den. 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1201; United States v. Williams (4th Cir., 1966), 355 F.2d 516, 517.