William J. SANDERS and Joseph Russell Buschkotter, Appellants,

v.

UNITED STATES of America, Appellee.

No. 25932.

United States Court of Appeals Fifth Circuit.

Aug. 11, 1969.

Rehearing Denied Sept. 19, 1969.

Rehearing Denied and Rehearing En Banc Denied Oct. 6, 1969.

Brooks Taylor, Crestview, Fla., Dan H. Stubbs, Jr., Jacksonville, Fla., Douglas Andrews, DeFuniak Springs, Fla., for appellant.

Joseph W. Hatchett, Asst. U. S. Atty., Jacksonville, Fla., Edward F. Boardman, U. S. Atty., Middle District of Florida, for appellee.

Before TUTTLE and GEWIN, Circuit Judges, and COMISKEY, District Judge.

COMISKEY, District Judge.

Appellants, William J. Sanders and Joseph Russell Buschkotter, were convicted of several counts of selling and

disposing of motor vehicles moving in interstate commerce with the knowledge that the automobiles had been stolen, in violation of 18 U.S.C. § 2313. Appellants were also convicted of conspiring to receive, transport, sell and dispose of such vehicles in violation of 18 U.S.C. § 371.

Appellants urge this Court to reverse their convictions because of several alleged errors in the proceedings below. First, both appellants contend that they were denied their right to a speedy trial in violation of the Sixth Amendment. There was an appreciable delay between the date of the indictment and the trial, which delay was due mainly to three continuances. One of these continuances was granted on motion of defendant Buschkotter, whose attorney had withdrawn at the last moment. It is apparent from the record that the reason for the other two continuances was the District Judge's overcrowded docket which was caused by circumstances beyond his control.[1] In order for the appellants to prevail in their contention, they must show not only that there was a delay, but that such delay was purposeful, oppressive, or prejudicial. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966). The appellants have made no such showing here, and we therefore affirm the District Court on this point.

Second, appellants contend that the District Court erred in refusing to grant a continuance on the day of the trial for more than two days. We hold that this argument is without merit, as the defendants have completely failed in their effort to show that the District Judge abused his discretion in refusing to grant a longer continuance.

Finally, appellants contend that the trial court erred in failing to direct verdicts of acquittal in their favor. In reviewing a District Court's refusal to direct a verdict of acquittal, this Court must affirm the District Judge and sustain the verdicts of guilty "if, taking the view most favorable to the Government, there is substantial evidence to support it." Downing v. United States, 348 F.2d 594, 601 (5th Cir.1965). "This Court has consistently held that on motion for judgment of acquittal 'The test is whether, viewing the evidence presented most favorable to the Government, a reasonable-minded jury could accept the relevant and admissible evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt.' Stephens v. United States, 5 Cir., 1965, 354 F.2d 999." Weaver v. United States, 374 F.2d 878, 881 (5th Cir.1967).

It is alleged by the Government that in February, 1965, the appellant Sanders, Jimmy Sisco, and Edgar Doyle Hickson met in Sanders' trailer at Milton, Florida, and devised a scheme to steal, transport and sell motor vehicles. Shortly after this meeting, Hickson and Sisco stole a number of automobiles in the southeastern part of the United States and transported them to Florida. Pursuant to this scheme, Sisco and Hickson would steal doorplates from automobiles, bring them to Alabama, a non-title state, and obtain registration and tag instruments based on the information contained on the stolen doorplate. After having registered the automobiles, which they did not have, they would steal automobiles matching the descriptions given by the doorplates and registration instruments, remove the doorplates from the stolen cars, and replace them with the stolen doorplates which they had used to obtain the false registration papers. The stolen cars would then be transported to Florida where they would be registered under the title laws, of that state by the use of the fraudulent title registration papers obtained in Alabama. It is further alleged by the Government that appellant Buschkotter entered the conspiracy in Febru-

1. See Record, page 51.

ary, 1965, after being told by one Fred E. Wilson that he could purchase late model automobiles for $1500.00 each. Buschkotter said he was interested in buying such cars and asked to be introduced to Sanders and his associates. In February, 1965, Buschkotter allegedly met with Hickson, Sanders and Wilson at a restaurant in Jacksonville, Florida, at which time he entered the conspiracy. Under the terms agreed upon by the conspirators, Sisco and Hickson would steal the cars, obtain the false registration papers, and transport them to Florida where Sanders and Buschkotter sold and disposed of them.

■■ We deal first with the conviction of appellant Sanders for conspiracy and for two counts of selling and disposing of motor vehicles. The conspiracy conviction was obtained under 18 U.S.C. § 371, provides in part that "[i]f two or more persons conspire * * * to commit any offense against the United States * * * and one or more of such persons do any act to effect the object of the conspiracy, each shall be" guilty of criminal conspiracy under this statute. Although the indictment lists numerous overt acts done in pursuance to this conspiracy, it was only necessary under the express language of the statute for the jury to find that the appellant Sanders participated in the conspiracy and committed one overt act with the knowledge that it was in furtherance of some object or purpose of the conspiracy. We are of the opinion that appellant Sanders' participation in his conspiracy was shown by enough evidence to warrant sending this part of the case to the jury. Jimmy Sisco, allegedly one of the participants in the scheme, testified that in March, 1965, he transported several cars in interstate commerce, including a 1964 Cadillac which he and Hickson had stolen in Mobile.[2] Sisco then gave the details of the Alabama registration process described above.[3]

Sisco was asked how he learned this registration process, and he said he learned it through a conversation with appellant Sanders and Hickson, which conversation took place in Sanders' trailer in Milton, Florida, in February, 1965, one month before he began stealing and transporting the cars.[4] Certainly, the jury was entitled to conclude from this testimony that appellant Sanders conspired to carry out this scheme in the conversation which took place in his trailer. One of the overt acts listed in the indictment was the delivery of a 1964 Oldsmobile by Sanders and Hickson to Fred E. Wilson, which allegedly took place on or about March 16, 1965 in Jacksonville, Florida. Wilson testified that he was given a 1964 Oldsmobile around March 16, 1965, by Hickson and Sanders.[5] This testimony constituted enough evidence of at least one overt act so that the jury was entitled to conclude that appellant Sanders was guilty of the conspiracy count.

■ Sanders was also convicted on two counts under 18 U.S.C. § 2313, which prohibits the sale or disposition of a motor vehicle moving in interstate commerce by a person who knows that such vehicle had been stolen. We hold that sufficient evidence was presented by the Government through the witnesses Fred E. Wilson and Robert W. Sale so that the jury could reasonably have concluded that he participated in the disposition of the automobiles listed in the indictment. We further hold that the testimony of Sisco, discussed above, concerning the meeting in Sanders' trailer, and the testimony of Fred E. Wilson, constituted sufficient evidence to entitle the jury to find that he had knowledge that the cars were stolen. Wilson testified that while he was riding in a car with Sanders and Hickson, he asked where the 1964 Oldsmobile he was to get had come from. At this point, according to Wilson's testimony, Hickson put a

2. Transcript, pages 1005–1006.

3. Transcript, pages 1008–1010.

4. Transcript, page 1011.

5. Transcript, pages 415–416.

gun to his neck and told him to keep quiet about the Oldsmobile.[6] There can be no doubt that this testimony alone was enough to give the jury a basis upon which to reasonably conclude that Sanders, who was driving the car when this incident occurred, knew that the cars were stolen.

■■ We also hold that the Government presented sufficient evidence against appellant Buschkotter both on the conspiracy count and on the § 2313 counts to send the case to the jury. Wilson testified that he introduced Buschkotter, who had expressed an interest in purchasing the cars in question, to Hickson and Sanders at a cocktail lounge in Jacksonville, Florida in February, 1965. Wilson further testified that he was not present during most of the conversation but did recall that they talked about the years, makes, and prices of the cars.[7] The Government showed by the testimony of numerous witnesses that Buschkotter, a used car salesman, sold the stolen cars in question, and Dewey Wayne Lehew testified that he transported a number of the cars into Florida and delivered one of the cars directly to Buschkotter.[8] We hold that all of this testimony, considered together, constitutes sufficient evidence to warrant the jury to believe that Buschkotter was guilty on the conspiracy charge and on the counts charging violations of 18 U.S.C. § 2313. It was not necessary that the Government prove by direct evidence that Buschkotter had knowledge that the cars were stolen; such knowledge may be proved by circumstantial evidence. Pilgrim v. United States, 266 F.2d 486 (5th Cir.1959). Here, we believe enough evidence was presented to give the jury a reasonable basis on which to find that appellant Buschkotter knew that the cars were stolen.

For the foregoing reasons, therefore, the judgment of the District Court is

Affirmed.

6. Transcript, pages 411, 414.

7. Transcript, pages 419–420.

ON PETITION FOR REHEAHING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is Denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.