**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Paul PANCZKO, Defendant-Appellant.**

**No. 17098.**

United States Court of Appeals, Seventh Circuit.

July 16, 1970.

Rehearing Denied Aug. 4, 1970.

---

Julius Lucius Echeles, Chicago, Ill., for defendant-appellant.

Thomas A. Foran, U. S. Atty., Michael B. Cohen, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and KILEY, Circuit Judge.

KILEY, Circuit Judge.

Defendant Panczko and Margaret Gorman were jointly indicted in one count for giving money to Sue M. Taylor to influence her action as a petit juror in a case, United States v. Paul Panczko, then pending in the district court, in violation of 18 U.S.C. § 201(b); and in another count for "corruptly * * * endeavoring" to impede the "due administration of justice" by that conduct in violation of 18 U.S.C. § 1503. The defendants were tried separately and convicted. Panczko was sentenced on concurrent sentences to fifteen years imprisonment, consecutive to a fifteen year sentence he was then serving.[1] Margaret Gorman's appeal was dismissed for want of prosecution. In Panczko's appeal, now before us, he claims he was denied a fair trial. We affirm the conviction.

The bribery indictment before us was returned February 29, 1968, and Panczko was arraigned March 22, 1968. Thereafter, having been allowed to proceed *pro se*, he filed various motions until June 26, 1968, the day set for trial. The morning of trial he served notice on the court of his refusal "to participate in any and all proceedings" because of the denial of his motions for, among other things, subpoenas for numerous witnesses. Panczko declined appointment of an attorney for his defense, but the court appointed Attorney Robert Atkins to give him what assistance he might later request. Panczko did not participate substantially in the trial, did not seek assistance from Attorney Atkins, and offered no defense. The trial lasted two hours.[2]

The principal government witnesses who testified to the arrangements for and delivery of the bribe were convicted felons D'Argento and LaJoy and juror Sue M. Taylor. Sue M. Taylor testified that Margaret Gorman told her she would be "well taken care of" if she could "find it in her heart" to vote not guilty in Panczko's trial, and left with her an envelope containing $500.00. After the government attorney completed his direct examination of witness Taylor, the court asked her, among other questions, whether she had deliberated with the other jurors and joined in the verdict that was rendered. She answered "Yes." Then

> The Court: And what was the verdict?
>
> The Witness: Guilty.[3]

Later, in argument to the jury, the government, to protect the integrity of witness Taylor, said she did not deposit the tainted money until some months after Panczko's "conviction." [4]

1. Under a 1965 conviction for counterfeiting, affirmed 367 F.2d 737 (7th Cir. 1966).

2. The district judge presided also at the preceding Margaret Gorman trial in which Panczko testified as a defense witness and under direct examination told of his prior criminal record and current imprisonment.

3. This conviction had previously been reversed by this court, United States v. Panczko, 353 F.2d 676 (7th Cir. 1965), and the case subsequently dismissed by the government in February, 1967, before commencement of the trial before us.

4. Panczko's claim of reversible error includes this argument as aggravating the court's alleged error in eliciting the Tay-

Panczko contends that the court's question elicited an answer which told the jury he had been previously convicted of a crime, and that the trial was thereby infected with reversible error because, although he did not testify, the jury learned of his "criminal record." This contention presents the main question before us.

## I.

■ The question and the answer it elicited had no proper place in the government's case in chief. The relevant facts here are far different from those in United States v. Skidmore, 123 F.2d 604, 608 (7th Cir. 1941), cert. denied, 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1201 (1942), which the government cites to justify the question and answer. Panczko's prior record was no element of the charges against him. And he was not a witness and the prior conviction was not used as impeaching material. Nor was his reputation an issue so as to justify its admission as in Michelson v. United States, 335 U.S. 469, 476, 69 S. Ct. 213, 93 L.Ed. 168 (1948); United States v. Rinaldi, 301 F.2d 576, 578 (2d Cir. 1962). No cautionary instruction was given. In fact, the district court subsequently instructed the jury that whether or not the offered bribe succeeded was no element of the alleged offense. We think the question and the

elicited answer were erroneously introduced into this record.

■ We do not agree with the government that because there was no objection to the district court's questions nor motion to strike the answer, the error is waived on appeal. So far as the record shows, Attorney Atkins and Panczko may have decided not to object or move to strike for fear of prejudice resulting from challenging the judge's question, before the jury, or from appearing to keep the jury from learning that Panczko had been convicted in the earlier trial. In view of the fact that the improper question was raised by the court *sua sponte*, and the failure of defense counsel to object may be due this understandable strategy, we hold that the error was not waived.[5]

## II.

■ We turn now to the principal question of whether the trial court's error prejudiced Panczko so as to compel reversal of his conviction. Panczko makes no claim that the error is of constitutional dimension and thus we have no occasion to apply the strict "harmless beyond a reasonable doubt" rule. *See* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).[6]

lor answer "Guilty." For convenience we shall not repeatedly refer to the asserted aggravating element, although that element is implied in our discussion of the court's question and the answer. In view of our conclusion, no purpose will be served by discussion of Panczko's argument that an instruction given by the court—that whether the attempted bribe succeeded or not was not an element of the offense—confused the jury because of the judge's question.

5. We prefer to base this conclusion on the particular circumstances surrounding the erroneous episode in this record, rather than on the "plain error" rule, Fed.R. Cr.P., Rule 52(b), as to which "The form in which the Rule is drafted is ambiguous." 8A Moore's Federal Practice ¶ 52.02 [2] (2nd ed.).

6. Where the error is not of constitutional dimension, the test of harmlessness is that stated by the Supreme Court in Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). 8A Moore's Federal Practice ¶ 52.03[1] (2nd ed.). There the Court said:

If, when all is said and done, the conviction [sic] is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. Bruno v. United States, *supra*, [308 U.S.] at 294 [60 S.Ct. at 200]. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judg-

The government argues that this episode may have helped rather than harmed Panczko, because it might have generated sympathy for him. We take this as another way of claiming that if there was error it was not prejudicial.

The order of the government's proof was as follows: Witness D'Argento testified that during Panczko's trial for the alleged postal offense he met with Panczko and LaJoy and discussed with Panczko a plan for bribing juror Taylor, and that later the same day Panczko, with approval of Margaret Gorman who was present, told him that she left $500.00 for Sue Taylor.

The next witness was Sue Taylor, who testified that Margaret Gorman came to her home and told her she "would be well taken care of" if she would find Panczko not guilty, that she told Margaret Gorman she would use her own judgment when she heard the evidence, that as Margaret Gorman left the Taylor home she dropped a white envelope on the counter in the kitchen, and that after Margaret Gorman left she took the envelope and locked it in her strongbox. Taylor further testified that a month later she opened the envelope and found five $100.00 bills which she replaced in the envelope and locked in the strongbox where they remained for several months, and that she then deposited the money in her account.

Under the court's questioning, Sue Taylor testified that the Panczko trial lasted about six days, that she deliberated with the other jurors and joined in the verdict that was rendered. The disputed question was then asked, "And what was the verdict?" and the witness answered, "Guilty."

The next witness was LaJoy. He testified to the same meeting with Panczko that D'Argento testified to, that he was asked by Panczko to drive Margaret Gorman to the Taylor home and that he did so; that he gave advice to Margaret Gorman as to what she should say to juror Taylor and to be sure there were no witnesses around when she did so; that Margaret Gorman told him she had $500.00; that he drove her to the Taylor home; that thereafter Margaret Gorman told him what she had told juror Taylor and that Margaret Gorman was told by juror Taylor "if she thought that Panczko was innocent she would find him innocent"; and that he, LaJoy, reported back to Panczko that everything worked out all right.

Panczko, at the conclusion of the questioning of each witness on direct, informed the court he had no questions because he had no opportunity to prepare his defense because of the pre-trial rulings of the court, and moved generally for a mistrial. The government rested after the foregoing proof, and again the court gave Panczko an opportunity to present defense witnesses. Panczko declined to do so. He did not testify himself. There was no cross-examination of witnesses D'Argento, Taylor and LaJoy. Panczko is responsible, therefore, for the failure to introduce testimony in defense, and the failure to seek the advice of Attorney Atkins throughout the trial. His conduct at the trial constructed the frame in which the trial was conducted.

Only two weaknesses appear in the government's proof. The first is the candid testimony of D'Argento and LaJoy, under questioning by government counsel, disclosing their prior records and their current imprisonment. The other is the testimony of witness Taylor concerning her failure to inform either the district court or the government of the offer of a bribe and her deposit of the tainted money. It was to protect the credibility of Sue Taylor, presumably,

ment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase af-

fected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

that the court questioned her about her activity as a juror and about the verdict.

The questioning by the district judge was with respect to the earlier trial of Panczko, to frustrate which the bribery offer to Taylor was made. The two trials therefore were closely related. This fact is significant in favor of the government where the government did not offer the evidence, and the court's question was not designed to prove Panczko's guilt. *See* United States v. Hoskins, 406 F.2d 72, 75 (7th Cir. 1969) and United States v. Fidanzi, 411 F.2d 1361 (7th Cir. 1969).[7]

■ The jury had before it uncontroverted evidence that Panczko, through Margaret Gorman and LaJoy, gave $500.00 to juror Taylor with intent to influence her decision in Panczko's earlier trial. We are able to say, "with fair assurance," under these circumstances, after considering the erroneous episode, that the jury verdict was not substantially swayed by the additional knowledge that Panczko had a prior conviction. As the evidence went to the jury this was not a close case, and we have no doubt that the verdict was free from substantial prejudicial influence. We hold therefore that neither the error of the district court in eliciting the answer "Guilty," nor the unfair reference in argument of the government attorney, separately or together, was reversible error.

### III.

Finally, we consider Panczko's claims of error in rulings upon his pre-trial motions. The motions sought certain defense "facilities," *i.e.*, library and telephone privileges, an investigator, a transcript of the preceding *Gorman* trial, and subpoenas for witnesses [8] whom he claimed were needed for his defense. The district court showed admirable patience throughout these proceedings, although intimating, with some reason, that perhaps Panczko was playing "cat and mouse," or using Fabian tactics. The court in its discretion granted some motions, and denied others including Panczko's original request for issuance of sixty-seven subpoenas. This number was reduced by Panczko to forty witnesses. Eventually the court sustained the motion for subpoenas to two Leavenworth officials, and Panczko requested subpoenas for eleven inmates to impeach anticipated testimony, against him, of convicts D'Argento and LaJoy.

■ Attorney Atkins told the court, after discussion with Panczko, that the testimony of some of the eleven would be cumulative. The court denied the motion for eleven, but stated that if Panczko would select "some" of the eleven he would order the selected inmate witnesses to be brought for use by Panczko. Despite advice from Attorney Atkins to make a selection of less than eleven, Panczko refused to do so. He in-

7. Panczko relies mainly on this court's decision in United States v. Reed, 376 F.2d 226, 228 (7th Cir. 1967), as a basis for his claim of reversible error. In *Reed*, we reversed the conviction of a defendant charged with bank robbery because his prior record—by the introduction and identification of prison mug shots—was placed before the jury. The decision in *Reed* does not require reversal on the facts now before us. In *Reed*, the error was compounded on several occasions; proper objections to the prejudicial testimony were made and denied; and the error was severely aggravated by several witnesses whose testimony indirectly allowed the jury to learn that Reed had been incarcerated in prison. Also neither in *Reed* nor in United States v. Rinaldi, 301 F.2d 576 (2nd Cir. 1962), was the erroneously admitted testimony related to the case on trial as in the record before us.

8. In relevant part, amended Rule 17(b) provides:
   (b) Defendants Unable to Pay. The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense.

sisted he needed the eleven. We think the court did not violate Panczko's Sixth Amendment right by this reasonable exercise of its discretion. Neither Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), nor this court's opinion in United States ex rel. Robinson v. Pate, 345 F.2d 691 (7th Cir. 1965), aff'd in part and remanded, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), militates against this conclusion.

■ Nor do we find any violation of Fed.R.Cr.P. Rule 17(b), as amended effective July 1, 1966. The district court was aware of the amendment, and the court's insistence on being informed generally concerning what the numerous witnesses from various parts of the country and various penitentiaries would testify about was reasonable as a basis for exercise of its discretion. The presence of government attorneys at the time the court sought this information did not prejudice Panczko. What was requested was not discovery of defendant's evidence, as in Holden v. United States, 393 F.2d 276, 278 (1st Cir. 1968).

■ We do not deem worthy of discussion Panczko's claims of denial of equal protection of law with respect to the preparation of his defense, or of denial of due process in the court's refusal to continue the trial from June to September and to discharge the jury panel because drawn from the same venire as the *Gorman* jury. The record of the district court's patience and exercise of discretion refutes the claims.

The court appointed Attorney Julius L. Echeles of the Chicago Bar to represent Panczko on this appeal. The court expresses its thanks to Attorney Echeles for his dedicated service on behalf of defendant Panczko.

Judgment affirmed.

SWYGERT, Chief Judge (dissenting).

I dissent from the holding of the majority that the district judge's questioning of witness Taylor, and the inadmissible evidence of the defendant's prior conviction adduced thereby, was not prejudicial. I have been unable to find another case holding that the erroneous admission of such evidence did not prejudice a criminal defendant. In fact, this circuit has always treated inadmissible evidence of other crimes in a jury trial as prejudicial. Thus, in United States v. Menk, 406 F.2d 124, 126 (7th Cir. 1968), this court held that "the admission of such evidence constituted error, and if this had been a jury trial we would be compelled to reverse. United States v. Reed, 376 F.2d 226, 228–229 (7th Cir. 1967); United States v. White, 355 F.2d 909, 910–911 (7th Cir. 1966)."

The majority in the instant case concludes "with fair assurance" that in its opinion the jury verdict was not "substantially swayed" by the knowledge of defendant's prior conviction. This holding seems to impose a new and stricter standard on a defendant to show how concededly inadmissible evidence prejudiced a jury against him. Not only does the requirement that a jury must be "substantially swayed" impose an impossible burden on a defendant before a reviewing court, but it renders the rules of evidence impotent to protect the right of criminal defendants to a fair trial free from this most damaging kind of evidence.

The rule announced by the majority purports to be derived from Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1247 (1946). The quotation extracted from that case loses the effect attributed to it by the majority when viewed in the context of the Supreme Court's opinion. In *Kotteakos* the Court reversed a conviction for conspiracy to violate the National Housing Act and held that certain improperly admitted evidence was not harmless error and did prejudice the defendant. Prior to the quotation cited by the majority in the instant case, the Court stated:

[I]t is not the appellate court's function to determine guilt or innocence. * * * Nor is it to speculate upon probable reconviction and decide

according to how the speculation comes out. \* \* \* Those judgments are exclusively for the jury. \* \* \*

But this does not mean that the appellate court can escape altogether taking account of the outcome. To weigh the error's effect against the entire setting of the record without relation to the verdict or judgment would be almost to work in a vacuum. \* \* \* In criminal causes that outcome is conviction. This is different, or may be, from guilt in fact. It is guilt in law, established by the judgment of laymen. And the question is, not were they right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting. \* \* \*

\* \* \* \* \* \*

If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand. \* \* \*

The quotation cited by the majority in the instant case then follows.

*Kotteakos* clearly does not stand for the majority's position. In fact, it requires the reviewing court to be "sure that the error did not influence the jury, or had but very slight effect" before such error can be considered nonprejudicial. This standard differs radically from one which allows an appellate court to speculate on guilt or innocence and then conclude "with fair assurance" that a jury was not "substantially swayed" by improperly admitted evidence.

The majority seems convinced that the jury, on the facts presented to it, could have returned no verdict other than one of guilt. Defendant presented no defense and refused to cross-examine the witnesses for the prosecution. The testimony of the chief Government witness

was, in my opinion, less than convincing, and the jury would not have been unreasonable had it chosen not to believe a juror who accepted bribe money, deposited it in her bank account, and then, months later, after voting to convict the man from whom she accepted the bribe money, told the Government of the bribe. However, it is this very type of speculation in which a reviewing court should not indulge. Kotteakos v. United States, *supra*, 328 U.S. at 763, 66 S.Ct. 1239.

Knowing that the defendant on trial before them had been previously convicted of another crime, we should presume that the jurors were at least partly influenced by that fact in rendering their verdict. This presumption compels reversal and entitles the defendant to a new trial.