**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Cromer KNOX and Charles R.
Wilson, a/k/a C. R. Wilson,
Defendants-Appellants.**

**No. 71-2233.**

United States Court of Appeals,
Fifth Circuit.

March 14, 1972.

Rehearing and Rehearing En Banc
Denied April 19, 1972.

A. W. Salyars, Lubbock, Tex., for Knox.

Pat Walker, Post, Tex., and Ralph Brock, Lubbock, Tex., for Wilson.

Eldon B. Mahon, U. S. Atty., Dallas, Tex., Willis T. Taylor, Asst. U. S. Atty., Lubbock, Tex., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge:

This is an appeal from judgments entered upon a jury verdict of guilty under a ten count indictment. Nine counts of the indictment charged mail fraud,[1] and the remaining count charged conspiracy to defraud.[2] Each defendant was found guilty of each count in which he was named.[3] We affirm.

Wilson is the owner of a royalty and the working interest of two wells located upon land which he owns. The oil from these wells was sold to Pan American Petroleum Company and was transported from the Wilson lease by a pipeline gathering system owned and operated by Service Pipeline Company. Knox was employed by Service Pipeline as a gauger to determine how much oil was being produced by the Wilson wells and thus how much oil entered the pipeline gathering system to be purchased by Pan American. Knox filled out run tickets showing the amount of oil produced from each of the two Wilson tanks and mailed them to Pan American. It then issued its checks in payment for the oil supposedly delivered to it by the pipeline

system and mailed them to Wilson. During a five-year period, based upon the run tickets prepared by Knox, Wilson received from Pan American a total of $97,885.32 in payment of oil allegedly produced by his lease. The total barrels of oil per well were shown to have increased each year.

Based upon oil samples from the Wilson lease, the condition of the check and Stentz valve, and production figures from comparable wells, there was expert testimony that no such increased production took place. On the contrary, the pipe connections on the Wilson lease showed no oil in them for up to a year, and the Stentz valve had not been used for more than a year.

■ The defendants first argue that it was reversible error for the court to fail to charge that the government had the burden of proving beyond a reasonable doubt (1) that Service Pipeline had shortages of oil equal to or in excess of the shortages from the Wilson lease, and (2) that Service Pipeline did not receive oil from the Wilson lease as shown on the run tickets. The short answer to this is that these instructions were not requested by the defendants, nor did they object to the failure of the court to give such instructions. We will not notice matters which were not presented to the district court except to prevent a miscarriage of justice. Fed.R.Crim.P. 30; United States v. Hall, 5 Cir. 1971, 440 F.2d 1277, 1278; Anderson v. United States, 5 Cir. 1968, 391 F.2d 243, 244.

■■ We are also unpersuaded that the court erred in refusing to specifically charge the reasonable hypothesis test of circumstantial evidence as requested by the defendants. The charge given clearly and adequately instructed the jury on reasonable doubt in a circumstantial evidence case. Holland v. United States, 1954, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Kolsky, 5 Cir. 1970, 423 F.2d

1. 18 U.S.C.A. § 1341.

2. 18 U.S.C.A. § 371.

3. Wilson was named in counts 1 through 10. Knox was named in counts 1, 2, 3, 5, 7, 9 and 10.

1111, 1113. Likewise the requested affirmative charge on a scheme to defraud was properly refused. The charge given covered the substance of the requested charge. It is not error to refuse to give the exact charge requested. Posey v. United States, 5 Cir. 1969, 416 F.2d 545, 555, cert. denied, Snowden v. United States, 397 U.S. 946, 90 S.Ct. 964, 25 L. Ed.2d 127; Tillman v. United States, 5 Cir. 1969, 406 F.2d 930, 940, vacated in part 395 U.S. 830, 89 S.Ct. 2143, 23 L. Ed.2d 742.

Next the defendants assert that it was error for the court to deny their motion to suppress (1) oil samples from the Wilson lease because they were obtained by an illegal search and seizure, and (2) comparison tests of the Wilson wells with other comparable wells because the Federal Business Records Act is unconstitutional if the defendants are denied the right of cross-examination and confrontation of either the person who has personal knowledge of the evidence, or who prepared the records relied upon.

■ We consider these contentions in inverse order. The Government's expert based his opinions concerning the production of the Wilson wells in comparison to other wells on original production records of all the leases which had been previously introduced through the individual custodians of each of the records, This not only fully met, but went beyond the test of admissibility that we approved in United States v. Williams, 5 Cir. 1971, 447 F.2d 1285 (en banc).

The defendant's argument that the oil samples and the Stentz valve from the Wilson lease were obtained as the result of an illegal search and seizure is based upon two entries on the Wilson lease made by representatives of the Railroad Commission of the State of Texas to conduct a production test, the results of which were introduced in evidence, and the Commission's excavation of the pipeline around the Wilson wells to ascertain whether there were any undisclosed pipelines. None were found. It is also contended that, prior to the digging, an investigator for Pan American had keys made for the locks on the tanks and without Wilson's knowledge gauged the tanks for a seven day period. The amount of the increased inventory was admitted in evidence. During the digging by the Railroad Commission a security agent for American Oil Company, with the knowledge and consent of Wilson, took samples of oil from the pipelines and tanks. He also had the Stentz valve removed. The valve and oil samples were sent to an independent laboratory to determine the age of the oil and when oil had last been run through the valve. The results of these tests were admitted in evidence.

■ We have no doubt that the railroad Commission of the State of Texas has the power, under its rule making authority, to enter into a lease for inspection purposes.[4] Cf. L. & G. Oil Co. v. Railroad Commission of Texas, 368 S.W.2d 187 (Tex.1963); Trapp v. Shell Oil Company, 145 Tex. 323, 198 S.W.2d 424 (1946). It is quite apparent that Service Pipeline and Pan American were properly concerned about the ever increasing production figures from the Wilson lease and accordingly made a complaint to the Commission. The Commission made an investigation as it was authorized and required to do. The production tests were made within the realm of its authority and the test results were therefore admissible.

4. (A) The Commission or its representatives shall have access to come upon any lease or property operated or controlled by a producer or transporter of oil or gas and to inspect any and all leases, properties and wells. All information obtained by Commission representatives shall be considered official and confidential information and shall be reported only to the Commission.

(B) Designated agents of the Commission are authorized to make any tests on any well at any time necessary to conservation regulation and the owner of such well is hereby directed to do all things that may be required of him by the Commissioner's agent to make such tests in a proper manner.

■ The evidence resulting from the gauging of the Wilson tanks by the investigator of Pan American, and the oil samples and the Stentz valve removed by the investigator of American Oil while the digging by the Railroad Commission was in process are clearly not within the exclusionary rule of the fourth amendment since its application is limited to the actions of the state or federal government and not to acts of private individuals. Burdeau v. McDowell, 1921, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048; Watson v. United States, 5 Cir. 1968, 391 F.2d 927, 928, cert. denied, 393 U.S. 985, 89 S.Ct. 459, 21 L.Ed.2d 446; United States v. McGuire, 2 Cir. 1967, 381 F.2d 306, 312–313, cert. denied 389 U.S. 1053, 88 S.Ct. 800, 19 L.Ed.2d 848; Barnes v. United States, 5 Cir. 1967, 373 F.2d 517, 518.

■ The defendants next object to testimony offered by the Government expert witness that oil samples taken from the adjoining Hudman lease showed fresh oil as compared with old Wilson oil. The person who took the sample from the Hudman tank was never identified by the Government. The expert simply used the label on the sample to identify it as Hudman oil. The objection was well taken for lack of proper identification of the sample, but the error was harmless. The age of the Wilson oil, not the age of the Hudman oil, was the critical issue. The evidence that the Wilson oil was old is overwhelming.

An error that might be prejudicial in a close case does not require reversal when evidence of the defendant's guilt is strong. United States v. Lipscomb, 5 Cir. 1970, 435 F.2d 795, 803, cert. denied, 401 U.S. 980 [91 S.Ct. 1213, 28 L.Ed.2d 331]; United States v. Panczko, 7 Cir. 1970, 429 F.2d 683, 688.

Considering the evidence as a whole we are "sure that the error did not influence the jury." Kotteakos v. United States, 1946, 328 U.S. 750, 764, [66 S.Ct. 1239, 1248, 90 L.Ed. 1557]. Fed.R.Crim.P. 52(a) United States v. Roland, 5 Cir. 1971, 449 F.2d 1281, 1282.

■ Finally, the defendants urge that the court erred in denying their motions for acquittal based upon the insufficiency of evidence to take the case to the jury. We disagree. On a motion for judgment of acquittal the test is whether, taking the view most favorable to the Government, a reasonably-minded jury might accept the relevant evidence as adequate to support a conclusion of the defendant's guilt beyond a reasonable doubt. United States v. Crane, 5 Cir. 1971, 445 F.2d 509, 520; Sanders and Buschkotter v. United States, 5 Cir. 1969, 416 F.2d 194, 196, cert. denied, 397 U.S. 952, 90 S.Ct. 978, 25 L.Ed.2d 135; Jones v. United States, 5 Cir. 1968, 391 F.2d 273, 274. The district court properly submitted the case to the jury. Appellants' other contentions are without merit. There the matter ends.

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.